Argued January 7, affirmed January 19, rehearing denied February 9, 1915.

## DUESTER v. ALVIN.*

(145 Pac. 660.)

**Deeds—Building Restrictions—Validity.**

1. A reservation in a deed of a city building lot of the right of forfeiture for the grantee's violation of building restrictions was only a partial restraint on the use of the property incident to a transfer of the title, and was valid.

[As to validity of conditions and restrictions in deeds, see note in 95 Am. St. Rep. 214.]

**Covenants—Effect—Subject Matter not in Esse.**

2. Covenants relating to a subject matter not in esse are personal, and do not run with the land so as to bind assignees, unless they are expressly named in the deed.

**Deeds—Use of Property—Regulations—Limitations.**

3. Limitations placed on the use of real property obtain their force from the right of the fee owner to reasonably regulate the manner in which the premises, when conveyed by him, shall be occupied, with

*On the necessity of the use of the word "assigns" in order to make covenant as to a thing not in esse run with the land, see note in 14 L. R. A. (N. S.) 185.

For the construction and effect of general restrictive covenant against the use of real property for purpose offensive or detrimental to the neighborhood, see note in 9 L. R. A. (N. S.) 1039.

As to the effect of restrictions on use of property on marketability of title, see note in 38 L. R. A. (N. S.) 34.          REPORTER.

reference to the kind and value of the structures to be erected and their location.

### Covenants—Building Restrictions—Covenants Running With Land.

4. A purchaser of real property subject to building restrictions, of which he has knowledge when he obtains the title, is bound to comply therewith.

### Covenants—Building Restrictions—Enforcement—Rights to Sue—Other Property Owners.

5. Where defendant acquired city property with knowledge that it was subject to building restrictions for the benefit of the entire district, owners of other property in the district acquired from the same grantor were entitled to sue in equity to enforce the restrictions.

### Injunction—Scope of Remedy—Negative Covenants in Deeds.

6. Equity will enforce by injunction negative covenants and clauses in deeds restricting the use of real property, though such covenants do not in law constitute assignments or covenants running with the land.

### Nuisance—Public Nuisance—Rights to Sue.

7. When the creation or maintenance of a public nuisance especially injures a person in a manner distinct from that suffered by the public, such person may sue to restrain its continuance.

### Injunction—Building Restrictions—Enforcement—Parties.

8. In proceedings to enforce building restrictions, the rights and remedies of the original grantor and of those immediate and intermediate grantees not being similar, it was unnecessary to join them as parties plaintiff, or to aver that they had been especially injured, or that the original grantor on request refused to become a party, in order to authorize an owner of a lot in the addition to protect his right in maintaining the uniformity in the locaton and value of residences to be erected in the district, by enforcing the restriction.

### Estoppel—Building Restrictions—Personal Covenant.

9. Where a corporation opened a residence addition and sold lots subject to restrictions as to the first cost of buildings to be erected thereon and restraining their location nearer than 20 feet from the street line, etc., such covenants were not personal to the grantor, but it was bound thereby under the doctrine of equitable estoppel, whereby each purchaser of property in the addition, except in the business district, was entitled to rely on the restrictions, and could enforce them against all purchasers except such as secured title without knowledge of the limitations imposed.

[As to recital in deed as estoppel, see note in Ann. Cas. 1915A, 100.]

### Covenants—Building Restrictions—Authority to Change.

10. Where a corporation opened a city addition and sold lots therein subject to restrictions as to the location of buildings, the corporation, after having sold lots subject to the restriction, could not change the general plan or scheme of the residence to be erected in the district set apart for that purpose by selling a lot free from the restriction.

74 Or.—35

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.    Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by F. X. Duester and H. C. Raven, for themselves and all other persons who might wish to join them, against P. A. Alvin, for a mandatory injunction to require him to remove from his real property a building, and also to set back farther from the line of a street the foundation for another structure to be erected on the premises. The facts are that E. Henry Womme, the owner in fee of a tract of real property in Multnomah County, Oregon, caused the land to be surveyed and platted as Overlook Addition to the City of Portland, dedicating to the public all the streets, alleys and boulevards noted on the plat, which map was duly recorded. The plat did not indicate reservations for any purpose, except the right of the dedicator to construct, maintain and operate street railways on, over and through some of the specified highways. Womme from time to time conveyed parts of the land so platted to the Overlook Land Company, a corporation, which sold and conveyed lots in that addition as purchasers thereof could be secured. The deeds so executed by the company contained a clause which reads:

"This conveyance, however, is made with the further consideration that the grantee ——, heirs or assigns, will not use said premises for any other than resident purposes; will not erect more than one residence on each and every lot thereof; will not construct any building nearer to the front line of any street than 20 feet, nor erect any residence on said premises, the first cost of which shall be less than $2,000; and that any violation of such covenants, or either of them,

shall work a forfeiture of the estate of the said grantee, ——, heirs or assigns, in and to the said premises.''

The corporation, on June 15, 1907, executed to Hans Holmberg and Theresa Holmberg, his wife, a deed to lot 9 in block E in that addition; the conveyance being subject to the foregoing building restrictions, except that two residences were permitted to be erected on the premises. The side lines of this lot as platted extend at right angles from Overlook Boulevard on the easterly end to an acute angle on Melrose Drive at the westerly end, the premises being 50 feet wide, its northerly line 185 feet and its southerly line 153 feet. The greater part of the boulevard named is parallel with the westerly border of Overlook Addition; that boundary as run from the northwest corner of the tract being south 37° 52' 15'' east. All blocks east of Overlook Boulevard, except such as are rendered angular by that highway, extend north and south, consisting of lots numbered from 1 to 8, inclusive, on the east side and from 9 to 16 on the west. Each of such lots is 50 feet from north to south and 100 feet from east to west. The blocks border upon avenues extending north and south, the first of which is Maryland Avenue on the east, and upon streets extending east and west. The lot conveyed by the company to Holmberg and his wife being so much larger than ordinary, the corporation granted permission to erect upon the premises two residences, but required each dwelling to comply with the restrictions hereinbefore mentioned. Holmberg and his wife, on March 6, 1908, conveyed the lot to F. P. Nelson and Emma Nelson, his wife, who, reserving the easterly 80 feet of the premises, sold and conveyed the remainder on May 11, 1912, to the defendant P. A. Alvin, but in the deed evidencing a transfer of the title Nel-

son and his wife inadvertently omitted the restricting covenant referred to. Alvin, pursuant to authority obtained from a representative of the Overlook Land Company to erect on the premises a garage, put up near the back part of the land so conveyed to him, at an outlay, as alleged in the answer, of $750, a building which was finished inside as a dwelling and which he occupied as a residence. He also procured plans for a house 28 feet wide and 48 feet long to be built on his land; the easterly end of the structure joining the smaller building and the westerly end, including a proposed built-in porch, the upper portion of which was to be finished as a part of the house, coming to a point, at its closest distance of 5 feet 4½ inches at an acute angle with Melrose Drive. He excavated a basement for the entire house, except the porch, and was putting in cement foundation walls when this suit was instituted.

The complaint charges, in effect, that the Overlook Land Company, intending to convert such addition into an exclusive and desirable residence district, adopted a general plan and scheme of building restrictions for the entire addition, except a few lots in blocks ——, and, to evidence a transfer of the legal title to such real property, approved a general form of deed, containing the restrictive covenants hereinbefore quoted; that the plaintiffs have purchased from the company lots in Overlook Addition and are the owners and holders of the legal title thereto; and that they and other purchasers of lots in such addition had knowledge of, and relied upon, such general scheme and plan of improvement for the benefit of the entire addition, by reason whereof a greater consideration was paid for such real property than would otherwise have been given without such restrictions, and they have

severally erected valuable dwelling-houses in compliance therewith.  The complaint sets forth the facts, in substance, as hereinbefore stated, and avers that the defendant purchased his part of a lot with knowledge of such general plan and scheme, and had been notified thereof and requested to remove the structure erected on his premises so as to conform with the requirements of such plan, but that he had refused to comply therewith, and that the plaintiffs had no plain, speedy or adequate remedy at law.

A temporary restraining order was granted when the suit was commenced.  The defendant moved to dissolve the injunction, and also demurred to the complaint on several grounds, but stipulated, however, that the motion might be denied and the demurrer overruled, reserving the right to present at the trial the legal questions so raised.  The answer denied the material allegations of the complaint, and for a further defense averred, in effect, that the corporation did not at any time place a general restriction over the entire addition, but reserved to itself the right originally to deal with the real property therein to suit itself and to sell and convey lots for business purposes without any restrictions; that the corporation has permitted numerous violations of such restrictions, as to the limit from the street lines and the cost of buildings, and there never was any general plan or scheme to beautify the addition or to provide uniformity with respect to the distance of buildings from the street or to the minimum cost of residences; that defendant's house, as located upon the ground, will not obstruct the view, or interfere with the enjoyment of plaintiffs' property; and that he had been damaged by the temporary injunction issued herein.

The reply put in issue the allegations of new matter in the answer, and, the testimony having been taken, the court made findings of fact and of law as alleged in the complaint, and granted the relief therein prayed for, from which decree the defendant appeals.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief with oral arguments by *Mr. W. A. Leet* and *Mr. L. D. Mahone.*

For respondents there was a brief over the names of *Mr. Schuyler C. Spencer, Mr. H. J. Parkison, Mr. Harry Yanckwich* and *Mr. E. V. Hillius,* with an oral argument by *Mr. Spencer.*

Opinion by MR. CHIEF JUSTICE MOORE.

It is contended that the complaint fails to show any legal right on the part of the plaintiffs to maintain this suit, for which reason their primary pleading does not state facts sufficient to entitle them to equitable interference, and that an error was committed in receiving any evidence on their part, to the introduction of all of which objections were made on that ground and exceptions saved.

1. It will be remembered that the restrictions imposed by the Overlook Land Company upon each grant of real property in Overlook Addition, except as to lots set apart for business purposes, provided that a violation of any of the covenants contained in the deeds should work a forfeiture of the estate of the grantee, his heirs or assigns, in or to the premises. It will thus be seen that the corporation reserved to itself a possible reversionary interest in the several lots conveyed, whereby the conditional estate granted might become forfeited for a violation of any of the restrictions pre-

scribed. Such provision in the deeds was only a partial restraint, incident to a transfer of the title to real property, and is valid: *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211).

2. Covenants relating to a subject matter not *in esse,* as for the building of a fence or the erection of a structure upon designated real property, are personal, and do not run with the land so as to bind assignees, unless they are expressly named in the deed: *Brown* v. *Southern Pacific Co.,* 36 Or. 128 (58 Pac. 1104, 78 Am. St. Rep. 761, 47 L. R. A. 409); *Hisey* v. *Presbyterian Church,* 130 Mo. App. 566 (109 S. W. 60).

3. Regulations and limitations placed upon the use of real property obtained their binding force and efficiency from the right which every owner of the fee has reasonably to regulate the manner of how the premises, when conveyed by him, shall be occupied, the kind and value of the structures to be erected, or the buildings to be placed thereon, and their location with respect to exterior or other lines.

4. When land is granted subject to such restrictions, the grantee, who had knowledge thereof before accepting a conveyance of the title to the premises, cannot equitably repudiate the restrictions, or refuse to comply with or fulfill them. A purchaser of real property subject to such limitations, if he secured the title with knowledge of the restrictions thus imposed, is bound thereby, and it would be unjust for him to trench upon or ignore the covenants and conditions which his immediate grantors assumed with respect to the premises: *Whitney* v. *Union Ry. Co.,* 11 Gray (Mass.), 359 (71 Am. Dec. 715); *Parker* v. *Nightingale,* 6 Allen (Mass.), 341 (83 Am. Dec. 632).

Though the restrictions herein provide "that any violation of such covenants, or either of them, shall

work a forfeiture of the estate of the said grantee, ——. heirs or assigns, in and to said premises," it is unnecessary to consider the nature of the covenant, for the testimony establishes the fact that, when negotiating for a purchase of a part of lot 9 in block E in Overlook Addition, the defendant was informed by Mrs. Nelson, the then part owner of the premises, of the restrictions imposed thereon by the original grantor. This covenant grants a conditional estate, in the nature of a negative easement, whereby each grantee who secured a title to any land in Overlook Addition with knowledge of the limitations prescribed became seised of a servient estate as to his own premises, and also the owner of a dominant estate in all other lots the deeds to which contained such conditions: *Silberman* v. *Uhrlaub,* 116 App. Div. 869 (102 N. Y. Supp. 299); *Landsberg* v. *Rosenwasser,* 124 App. Div. 559 (108 N. Y. Supp. 929).

5. The covenant in each deed executed by the corporation was made in pursuance of a general scheme adopted by it for the purpose of preserving the addition as desirable residence property. The restriction created an equitable servitude which must be regarded as of value to the whole property. It was inserted in the deeds for the benefit of those who became owners of separate parcels, and is binding in equity on a grantee of any portion of the premises who secured a title thereto with knowledge of such restriction: *Boyden* v. *Roberts,* 131 Wis. 659 (111 N. W. 701).

6. Courts of equity will enforce, by injunction, negative covenants and clauses in deeds, restricting the use of real estate, though such conditions do not, in law, constitute easements or covenants running with the land: *Robinson* v. *Edgell,* 57 W. Va. 157 (49 S. E. 1027).

These restrictions, in the case at bar, prohibit each owner of real property so conveyed from violating the limitations put upon his premises, because a breach thereof would or might affect the dominant estate therein of some or all other owners of lots. Since his land is subjected to the burdens incident to a servient estate in the premises, he has the corresponding advantage of enforcing in equity his rights in and to the dominant estate as to all other real property the owners of which obtained their title with knowledge of the covenant, and he may prevent any infringement that would or might affect his land.

7. The rule prevails in this state that, when the creation or maintenance of a public nuisance would specially injure a private party in a manner distinct from that suffered by the public, he may maintain a suit to restrain its continuance: *Parrish* v. *Stephens,* 1 Or. 74; *Luhrs* v. *Sturtevant,* 10 Or. 170; *Walts* v. *Foster,* 12 Or. 247 (7 Pac. 24); *Esson* v. *Wattier,* 25 Or. 7 (34 Pac. 756); *Blagen* v. *Smith,* 34 Or. 394 (56 Pac. 292, 44 L. R. A. 522); *Van Buskirk* v. *Bond,* 52 Or. 234 (96 Pac. 1103); *Moore* v. *Fowler,* 58 Or. 292 (114 Pac. 472); *Bernard* v. *Willamette Box & L. Co.,* 64 Or. 223 (129 Pac. 1039). The obstruction of a highway is a public nuisance constituting a misdemeanor, and, upon a conviction for a violation thereof, the party so found guilty may be punished: Section 2210, L. O. L. In such case, whether the state or a private party who has sustained a special injury prosecute the action for an infringement of the public right is unimportant, for the principal relief sought in either instance is identical. Other illustrations might be cited where the misapplication of public funds have been enjoined at the suit of a private party, in which case the state also could have obtained the same relief,

In the case at bar, however, a suit by the Overlook Land Company against one of its grantees of real property in Overlook Addition to have a forfeiture decreed for an alleged breach of the covenant would essentially differ from a suit by one or more of the owners of lots in such addition who, by reason of their dominant estate, seek to enjoin a violation of such restrictions by the owners of other lots, though each suit might be predicated upon an allegation of the same facts.

8. The rights and remedies of the original grantor and of its immediate or intermediate grantees of such lots not being similar, it was unnecessary to join them as parties plaintiff, or to aver that they had been specially injured, or that the Overlook Land Company, upon request, refused to become a party, in order to authorize an owner of a lot in such addition to protect his right in maintaining the uniformity of the location and the value of residences to be erected upon the premises: *Parker* v. *Nightingale,* 6 Allen (Mass.), 341 (83 Am. Dec. 632).

In *Sharp* v. *Ropes,* 110 Mass. 381, 385, Mr. Justice AMES, in discussing this subject, says:

"It is undoubtedly true, and has often been decided, that where a tract of land is subdivided into lots, and those lots are conveyed to separate purchasers, subject to conditions that are of a nature to operate as inducements to the purchase, and to give to each purchaser the benefit of a general plan of building or occupation, so that each shall have attached to his own lot a right in the nature of an easement or incorporeal hereditament in the lots of the others, a right is thereby acquired by each grantee which he may enforce against any other grantee."

To the same effect, see *Hamlen* v. *Werner,* 144 Mass. 396 (11 N. E. 684); *Hills* v. *Metzenroth,* 173 Mass. 423 (53 N. E. 890); *Evans* v. *Foss,* 194 Mass. 513 (80 N. E.

587, 11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039); *Cough-lin* v. *Barker,* 46 Mo. App. 54; *Boyden* v. *Roberts,* 131 Wis. 659 (111 N. W. 701).

The plaintiffs herein are proper parties, and the averments of the complaint in respect to their right to maintain this suit are sufficient.

It is maintained that, since the Overlook Land Company conveyed lot 9 in block E in Overlook Addition to Hans Holmberg and his wife, granting the right to place on the premises two dwellings, each to be located with reference to the prescribed distance from the street lines, authority to change the restrictions was thereby reserved to the company, whereby the limitation was not binding upon it, for which reason the restrictions are not reciprocal or obligatory upon the defendant, and hence an error was committed in granting the relief prayed for in the complaint.

"A court of equity," says Vice-Chancellor Stevens in *Leaver* v. *Gorman,* 73 N. J. Eq. 129 (67 Atl. 111), "will restrain the violation of a covenant entered into by a grantee restrictive of the use of lands conveyed, not only against the grantee covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not.  There is, however, this distinction: The original grantor in imposing the covenant upon the grantee either may or may not bind himself.  If he does not bind himself, then his grantee, having no right of action against him, cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining lands."

Building restrictions, however, must be construed so as to give effect to the intention of the parties: *Hyman* v. *Tash* (N. J. Ch.), 71 Atl. 742.  An examination of some of the deeds executed by the Overlook Land Company of property in Overlook Addition, which convey-

ances were received in evidence, fails to show any covenant upon the part of that grantor whereby it expressly stipulated to bind itself. As the corporation is not a party to this suit, whatever may be said in this opinion in respect to its method of dealing with the real property cannot be binding upon it. A printed circular issued by its agents, offering for sale lots in such addition, refers to the street and other public improvements that had been made on the premises; the car service which had been secured; the scenery which the location afforded; and the restrictions which were to be imposed on each lot. Relying upon these representations, of which the corporation undoubtedly had notice, purchasers of lots in the addition secured a title thereto by deeds containing, with but few exceptions, the restrictions specified.

9. From a careful examination of all the testimony and from a consideration of all the circumstances attending the sale of lots we are satisfied that the covenants hereinbefore set forth were not personal to the corporation, but that it was bound thereby under the doctrine of an equitable estoppel, whereby each purchaser of real property in Overlook Addition, except in the business district, had the right to rely upon the restrictions, and can enforce them against all other purchasers, except such as have been mentioned, who secured a title to their premises with knowledge of the limitation imposed: *Bimson* v. *Bultman,* 3 App. Div. 198 (38 N. Y. Supp. 209).

It is argued that the 20-foot restriction with respect to the location of residences does not apply to lots that border upon a street in any other manner than a right angle, and, as the defendant's real property abuts upon Melrose Drive at an acute angle, his part of a lot is exempt from the limitation. Several

houses have been built slightly within the prescribed limits on lots, the fronts of which are rendered angular, and one deed executed by the corporation of a lot having such front provides that the dwelling to be erected thereon may be placed as near as 15 feet from the property line. It is stated in the briefs of the plaintiffs' counsel that the lot, for the benefit of which the corporation pretended to confer authority upon the owners to erect a residence nearer than 20 feet from the street, has no building thereon, and that such attempted violation of the restriction was unknown to them until the trial of this cause.

10. From what has been said upon another point, it is believed that the corporation did not reserve the privilege, nor could it exercise authority, to change the general plan and scheme of the residences to be erected in the district set apart for that purpose. The testimony shows that, when this cause was tried, there had been erected in Overlook Addition 130 houses, 5 of which were nearer than 20 feet from the front line of the lot on which each was respectively placed. The defendant's evidence shows several dwellings have been erected, each of which has been placed a few inches nearer the street line than prescribed. It appears, however, that these infringements upon the covenant were caused by errors of building contractors, who, in erecting dwellings, failed to locate the margins of the several streets. A few slight departures from the prescribed restrictions should not defeat the right of an owner of a dominant estate in the lots where the violations have occurred from enforcing the limitations as to other lots.

It is conceded that the restrictions with respect to the 20-foot limit do not apply to all the buildings erected on Maryland Avenue, on which highway the

houses used for business purposes are located. It is necessary that goods, wares and merchandise should be kept for sale within reasonable distance from residence districts, and, complying with this requirement, it seems to have been mutually agreed by the residents of Overlook Addition that offices, shops and stores devoted to trade and business should be erected near the property line in order to accommodate the public. But, however this may be, the few departures on Maryland Avenue from the general plan ought not to defeat the entire scheme.

Many other alleged errors are assigned, but, deeming them unimportant, and believing this cause was correctly decided, the decree should be affirmed; and it is so ordered.    AFFIRMED.    REHEARING DENIED.

MR. JUSTICE BURNETT, MR. JUSTICE EAKIN and MR. JUSTICE BENSON concur.