Submitted on briefs October 19, reversed November 9, 1915.

# ROBERTS *v.* LOMBARD.*

### (152 Pac. 499.)

**Evidence—Parol Evidence Rule.**

1. Section 713, L. O. L., declaring that when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be no evidence of the agreement other than the contents of the writing, except where a mistake is in issue, or the validity of the agreement is in dispute, plaintiff, who entered into a contract for the purchase of land, and received a conveyance, cannot, where neither the memorandum of purchase nor the conveyance referred to restrictions upon the grantor's other property, introduce, in the absence of fraud, evidence of a parol agreement by the grantor that his other property in the vicinity should be subjected to the same building restrictions as that acquired by plaintiff.

[As to parol evidence to add to or vary a writing, see note in 56 Am. St. Rep. 659.]

**Frauds, Statute of—Authority of Agent—Agreement.**

2. Section 804, L. O. L., declares that no estate or interest in land, nor any trust or power concerning such property can be created, transferred or declared except by operation of law, or by a conveyance in writing subscribed by the party or by his lawful agent under written authority, Section 808 provides that agreements for employment of a broker to sell land shall be void unless in writing, and that agreements relating to land shall be void unless in writing signed by the party to be charged or his duly authorized agent whose authority shall be in writing. A written agreement, authorizing an agent to sell land did not empower him to agree to restrictions on the remaining property of the vendor, but in plain terms reserved to the vendor the right to modify the prices, terms and conditions. *Held*, that as the purchaser was bound at his peril to ascertain the agent's authority, an agreement by the agent that the remaining property of the vendor should be subject to the same restrictions imposed on the property conveyed is void.

[As to necessity that agent have written authority to make memorandum required by statute of frauds, see note in Ann. Cas. 1912B, 1295.]

**Covenants—Construction.**

3. Though a land owner imposed restrictive covenants on most of the parcels sold, that did not show a scheme to generally impose restrictions on all his property, and a grantee who took subject to restrictions cannot enforce similar restrictions against the remaining property of the vendor or against one who purchased without restriction.

---

*The question of oral or implied building restrictions as to parcels retained by the grantor is discussed in note in 45 L. R. A. (N. S.) 963.

REPORTER.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is a suit by L. D. Roberts against B. M. Lombard, Caroline S. Lombard and D. G. Wilson.

In substance the plaintiff alleges that the defendant Lombard and his wife caused certain property named in the complaint and owned by them to be platted into blocks, lots and streets "with a view to improving said real property by opening the same as an addition to the City of Portland, Multnomah County, Oregon, and converting it into a high-class, exclusive and highly restricted residence addition in and to the said city," which plat they caused to be approved by the proper authorities and recorded. He also says that:

"The Lombards formed and advertised a general plan for the sale of lots, and represented and advertised that the addition would be a highly restricted, exclusive high-class residence district, and," among other things, "that during the period of 20 years after September 9, 1909, no part of the premises should be occupied or used for any shop, store, saloon, hotel or other place of business, and that no part of said addition should be used, or be permitted to be used, for the carrying on of any trade or business whatever, nor for any other than residence purposes."

He further avers that about December 1, 1909, the defendants Lombard, their servants, representatives and selling agents, for the purpose of inducing the plaintiff to purchase a lot in said addition, represented to him that the restrictions already mentioned would be enforced, and that no lots therein had been or would be sold by the Lombards unless the deed contained the same limitations. He says that he relied

upon these representations and promises, and in consideration thereof, and not otherwise, purchased from them lot ·13 in block 11, paying the sum of $1,100 therefor and receiving from the defendants a deed conveying to him said lot in fee simple, subject to the restrictions and conditions stated. He contended he would not have purchased except for them, that a great number of other persons bought lots in the addition under like circumstances, and that the plaintiff has caused to be erected upon lot 13 a residence which he is now occupying. The grievance of which he complains, as set out in the complaint, is that afterward the Lombards made a deed to defendant Wilson of lot 15 in block 11, omitting the restriction, and although the latter knew that the land had been platted as a high-class, exclusive and highly restricted addition, and that each lot was subject to the restrictions, the defendants threaten to and will erect on lots 14 and 15, in block 11, a shop, store and place of business. In general, the prayer of the complaint is for an injunction preventing the defendants from carrying out their purpose and for further relief. The platting of the property and the recording thereof are admitted by the defendants. The purchase by the plaintiff and his erection of the residence are also admitted, but the restrictions mentioned and the general plan of improvement described in the complaint are denied. The Circuit Court rendered a decree substantially according to the prayer, and the defendants appeal.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

For appellants there was a brief over the name of *Messrs. Kollock, Zollinger & McDowall.*

For respondent there was a brief over the name of *Messrs. Littlefield & Maguire.*

MR. JUSTICE BURNETT delivered the opinion of the court.

A brief review of the testimony on the part of the plaintiff is necessary. Seeking to charge the defendants, the plaintiff introduced an agreement of date September 9, 1909, between Lombard and the Columbia Trust Company, from which we quote the following:

"Lombard for and in consideration of the agreements hereinafter contained does hereby give the company the exclusive right for the period of six (6) months from and after the date of this instrument, for and on behalf of Lombard and as his selling agent or broker, to sell and contract to sell lots and blocks in that certain addition to the City of Portland, Multnomah County, State of Oregon, situated within the corporate limits of the City of Portland, owned by Lombard and known as Olmsted Park. * * The prices at which and terms and conditions upon which said real property shall be sold shall at all times during the life of this agreement be satisfactory to Lombard and shall be such as may from time to time be designated and prescribed by Lombard to the company, it being understood and agreed that Lombard shall have the right at any and all times, upon reasonable notice to the company, to change or modify such prices, terms, and conditions. A memorandum of the prices and terms now satisfactory to Lombard has been written upon each of two copies of said plat of Olmsted Park, each of said copies being signed for identification by Lombard and an officer of the company and one of said copies being in the possession of Lombard and the other in the possession of the company. Said copies are counterparts of each other in the aforesaid and all other particulars and for greater certainty ex-

press reference is hereby made to each of them. All sales made or contracted to be made hereunder by the company shall be made subject in all respects to the terms, conditions, restrictions and requirements set forth and contained in the printed blank form of agreement for the purchase and sale of property in said Olmsted Park of which said form a copy marked 'Exhibit A' is hereto attached; and said 'Exhibit A' is hereby expressly referred to and made a part of this instrument. But Lombard hereby reserves the right at any time during the life of this agreement to change or modify, upon reasonable notice to the company, said blank form of agreement in any respect whatever or to adopt a new form of agreement for use in such sales; and the company agrees in any such event to make all sales subject to the terms, conditions, restrictions and requirements set forth and contained in such new, changed or modified form. And it is expressly agreed that all agreements for the sale of property in said Olmsted Park and all other contracts of any nature relative to such property and all conveyance thereof shall be executed in every instance by Lombard and not by the company."

The commission to be allowed the company is set out, but it is not necessary to consider the same. The contract contained the further provision that:

"The company in consideration of the commission to be paid as aforesaid hereby agrees to make every reasonable effort by advertising and otherwise, to sell lots and blocks in said Olmsted Park, and also agrees to sell the same, whenever sold, at the prices and upon the terms and conditions hereinbefore mentioned and such as may be hereafter from time to time prescribed by Lombard."

The contract concludes with this stipulation:

"It is understood and agreed that the several lots marked 'S' on the plats of Olmsted Park referred to herein are withheld from sale by Lombard and are not to come within the purview of this agreement."

Attached to the agreement as part thereof is the blank form of contract called "Exhibit A," to be signed by intending purchasers, and containing the required conditions already stated in the complaint. A witness for the plaintiff, J. A. Lee, vice-president of the Columbia Trust Company, who executed the agreement, identified a plat which he and the defendant Lombard had initialed for identification, and testified thus:

"Q. Mr. Lee, is this the plat which is referred to in this contract as containing a memorandum of the prices and terms now satisfactory to Lombard?

"A. It is, excepting that I have no recollection of there having been in this contract entered into as between the Columbia Trust Company and Mr. Lombard, any exception of lots for business purposes. I recall that there were exceptions from the contract; that is, that there were certain lots in Olmsted Park that did not come within the purview of the agreement. Lots marked 'S' for identification. But I have no recollection that at any time there were to be any lots, at any time during the period that the Columbia Trust Company had the selling agency, that might be used for other than residence purposes."

Besides the initials which Mr. Lee said were made at the execution of the contract, there appears on this plat this writing:

"Lots 9, 10, 11, 12, block 4, and all of block 12 reserved for business purposes; lots 1, 14, 15, block 11, to be usable for business purposes."

Mr. Lee testifies in substance that to the best of his recollection this memorandum was not on the plat when he initialed it. Mr. Lombard positively declares on oath that it was there at the time. There is no dispute whatever that lots 14 and 15 in block 11 were initialed with the letter "S" as mentioned in the

clause of the contract last quoted. This renders it unnecessary to determine whether the memorandum quoted above was on the plat when Lee and Lombard marked it for identification as part of the contract, for, as lot 13 was indisputably marked "S," it was expressly excluded from the operation of the agency agreement.

Adjoining lot 13, in block 11, upon which the plaintiff has built his residence, is lot 14 in that block, where the defendants are about to build a store, as alleged in the complaint. The plaintiff also introduced in evidence an advertising folder issued by the Columbia Trust Company, describing Olmsted Park in glowing terms. Among other things, it says:

"The proximity of Irvington, which is universally recognized as Portland's finest home district, assures its success as a high-class residence district."

Further:

"Not only is Olmsted Park in the direction in which people are accustomed to look for high-class property, but it is surrounded by property covered with even heavier building restrictions than has made Irvington the cream of Portland's residence property."

Again:

"Here is the only opportunity for an exclusive street-car service in Portland. With the Broadway line passing up Broadway, through a high-class residence district all the way, then north through Irvington, and ending in the highly restricted district in and surrounding Olmsted Park, we have an exclusive car service which cannot be equalled in the entire city. * * Now Olmsted Park is but a few moments' further ride and the most shut-in lot in Olmsted Park has a better outlook than the most sightly lot in Irvington. The restrictions and improvements are even heavier and better."

These are the only printed representations appearing in the evidence about restrictions. Indefinite as they are, they do not correspond with nor prove the allegations of the complaint to the effect that the Lombards had advertised a prohibition for 20 years of any shop, store, saloon, hotel or other place of business on the platted realty.

The plaintiff testifies in substance that he saw the advertisements of the Columbia Trust Company in the daily papers, and wrote to the company about them, in response to which Mr. E. A. Clark came to him and left the circular mentioned. He says:

"Mr. Clark referred me to the fact that this was to be a very highly restricted residence district; that the residences were to cost twenty-five hundred dollars or more; were to be located 25 feet back from the street line or lot line, rather; that there could be no stores or other places of business, or apartment houses, or any buildings of that kind in the district."

Clark was a salesman for the Columbia Trust Company, and corroborates the testimony of Roberts about the representations made. It appears that after these negotiations with Clark he and plaintiff signed the following paper:

"This agreement, entered into this 1st day of January, 1910, by and between Columbia Trust Company, a corporation of Portland, Oregon, acting as agent, and L. D. Roberts, purchaser; address 639 Union Ave. No. ——, witnesseth: That the Columbia Trust Company, agent, agrees to sell and the aforesaid purchaser agrees to buy lot numbered 13 in block numbered 11 in Olmsted Park subject to confirmation by owners, for the purchase price of $1100.00 upon the following terms: $110.00 cash, and $16.50 per month at 6% on deferred payments, and subject also to such restrictions and conditions as may run with the land.

"Columbia Trust Company hereby acknowledges receipt of $110.00 as earnest money and part of the purchase price, which deposit shall be returned in case owner does not confirm this sale.

"Columbia Trust Company, Agent, ·

"By E. A. Clark.

"L. D. Roberts, Purchaser."

The next succeeding step in the transaction was the execution by Roberts and the Lombards of an agreement in writing for the plaintiff to buy and the Lombards to sell to him lot 13 in block 11, subject to the conditions pleaded in the plaintiff's complaint. This was followed by a deed, of date May 8, 1912, from the Lombards to the plaintiff conveying the same property with the same 20-year restriction. The plaintiff does not claim that he ever talked with Lombard, or anyone else, except Clark, about the transaction. Neither does it appear that the defendants ever were aware of the statements of Clark or that he had any connection with the negotiations culminating in the conveyance of the property. Plaintiff introduced the testimony of several other persons who had bought lots in the addition with the same restrictions.

1. At the outset we note that this is not a suit to rescind the contract. In effect the object of this litigation is to fetter the estate of Lombard in property not included in plaintiff's deed or in the contract which the former made with the Columbia Trust Company. The sole basis for this is the oral representation made by the witness Clark, and upon that alone, without alleging any fraud, the plaintiff seeks to ingraft a condition upon an estate in real property. It is stated thus in Section 713, L. O. L.:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered

as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:—1. Where a mistake or imperfection of the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute. * * "

On the merits of the case as affected by this provision of our statute we find the plaintiff signing the memorandum sales slip with Clark, subjecting the lot he bought to restrictions and conditions, but saying nothing whatever about a like imposition upon any other property of the defendants. He follows this up with a contract to buy his lot under like restrictions, but again omitting all reference to other property. The ultimate deed conveying the title is subject to the same criticism. In the absence of any allegation of fraud on the part of the defendants or anyone professing to act for them, and considering that this is an effort to enforce a contract rather than to rescind it on the ground of fraud, it would seem that Section 713, L. O. L., already quoted, would control the case against the contention of the plaintiff.

2, 3. Moreover, the plaintiff would prevail, if at all, upon the oral statements of Clark, a salesman employed by the Columbia Trust Company. The authority of the agent in this instance is in writing, and it is a question of law for the court to construe that instrument and to declare its legal effect. In plain terms Lombard reserved the right to change or modify the prices, terms and conditions. He also withholds from the operation of the contract of agency the other lots upon which the plaintiff would impose the conditions mentioned. Applicable to the matter of agency, Section 808, L. O. L., reads thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law; * * 7. An agreement concerning real property, made by an agent of the party sought to be charged, unless the authority of the agent be in writing; 8. An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

The case is also vitally affected adversely to the plaintiff by Section 804, L. O. L., reading thus:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority and executed with such formalities as are required by law."

In *Baker* v. *Seaweard*, 63 Or. 350 (127 Pac. 961), Mr. Chief Justice EAKIN wrote:

"It may be stated generally that a principal is not bound by the acts of his agent, unless within the real or apparent scope of the authority of such agent; and one dealing with an agent is bound, at his peril, to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof: *Reid* v. *Alaska Packing Co.*, 47 Or. 215 (83 Pac. 139). And where a party relies upon a contract made with a person claiming to be an agent of another, he must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority: *Rumble* v. *Cum-*

*mings,* 52 Or. 203 (95 Pac. 1111).   The agency being proved or admitted, it is the duty of the court to determine whether or not the particular act of the agent relied on was within his authority.  * *  Where the fact of the appointment and authority of an agent are not in controversy, it is the duty of the court to declare, as a matter of law, whether or not it empowers him to perform the particular act in question.''

The rule is thus stated in 1 Mechem on Agency, Section 707:

''Parties dealing with an agent known by them to be acting only under an express grant, whether the authority conferred be general or special, are bound to take notice of the nature and extent of the authority conferred.   They must be regarded as dealing with that grant before them, and are bound at their peril to notice the limitations thereto prescribed either by its own terms or by construction of law.  * *  So, where the act assumed to be done by the agent is one for which the authority is required by law to be conferred by a written instrument or by a writing under seal, the parties dealing with him must take notice of that fact, and they will be bound by any limitations or restrictions contained therein, although they have not had actual knowledge of them.''

To the same effect is 1 Clark & Skyles on Agency, Section 210, subdivision ''d'':

''In the case of agencies of a certain nature it is required that the authority must be conferred according to certain formalities, as that it must have been in writing, and under seal, or must have been placed on record.   Where such is the case, it is the duty of a third person dealing with such agent to see that all conditions requisite to the conferring of such authority have been complied with, and that the agent has acted within such authority.   If he does not do so, he deals with the agent at his own risk.''

The principle to be derived from these excerpts is that apparent authority cannot affect a case of agency which is prescribed by writing of which the third party has knowledge, either actual or imputed to him by operation of law. Bound by the statute as he was, the plaintiff must be held to have known that the statements of Clark purporting to bind the estate of Lombard in the remainder of the property were in excess of his authority, unless the same was in writing, and would not be obligatory upon the defendants. It has often been held that the mere declarations of one professing to act as an agent are not sufficient proof of his agency. To charge the defendants here with the representations of Clark respecting any of the real property mentioned, it is essential that plaintiff should show some writing signed by Lombard authorizing them to be made. The record is absolutely silent about any such precept to Clark. Moreover, an inspection of the instrument relied upon by the plaintiff to create authority in the Columbia Trust Company discloses that lot 14 in block 11, adjoining the plaintiff's premises, was excluded from the operation of the agency contract, it being marked with the letter "S" as described in the stipulation of agency. A common illustration of the clause rendering void an agreement concerning real property, made by an agent of the party sought to be charged, unless his agent's authority be in writing, is found in the everyday transaction of a power of attorney under seal being required to pass title by deed executed by an agent.

The plaintiff relies strongly on *Morse* v. *Whitcomb,* 54 Or. 412 (102 Pac. 788, 103 Pac. 775, 135 Am. St. Rep. 832). In that case the owners of property platted it into lots, blocks and streets, and when selling to the plaintiff personally represented that a strip on one

side was reserved for half a street between their addition and another adjacent. It was left open for more than 10 years, and used generally as a street by people traveling in that vicinity. The question of agency was not involved. The acts and declarations of the holders of the title amounted to a dedication *in pais*. The case is easily distinguishable from the present contention, in that the owner himself made the statements and did the acts characterizing the transaction and charging the estate. In the instant case no representation whatever, either oral or written, can be attributed to the defendants. The conditions upon which Lombard offered his property for sale were carefully detailed in the authority which he gave his agent. It could not be properly promulgated in any other manner than by the writing if we respect the terms of Sections 804 and 808, L. O. L. In *Allen* v. *City of Detroit,* 167 Mich. 464 (133 N. W. 317, 36 L. R. A. (N. S.) 890), the action of the court was based upon the positive statements of the owner himself and his previous advertisement restricting the use of the property. *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660), was a case where the defendant had accepted a deed with similar restrictions, and other parties in the addition successfully compelled him to observe its terms. That precedent would be authority for the proposition that those owning property under such conditions adjacent to the plaintiff's holding might compel him to observe the restriction under which he took title. It is worthy of note that Mr. Chief Justice MOORE, writing in *Duester* v. *Alvin,* quotes with approval the following clause from *Leaver* v. *Gorman,* 73 N. J. Eq. 129 (67 Atl. 111):

"A court of equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of lands conveyed, not only against the grantee

78 Or.—8

covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not. There is, however, this distinction: The original grantor, in imposing the covenant upon the grantee, either may or may not bind himself. If he does not bind himself then his grantee, having no right of action against him, cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining lands.''

*Evans* v. *Foss,* 194 Mass. 513 (80 N. E. 587, 11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039), was a case where the deeds of both parties had the same restrictions and were enforceable one against the other. The doctrine of *Allen* v. *Barrett,* 213 Mass. 36 (99 N. E. 575, Ann. Cas. 1913E, 820), is that if there is a general scheme for restriction, each grantee holding under a deed containing such a reservation may be enjoined at the suit of another grantee claiming through a like conveyance. This is practically the situation in *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660). The English cases, *Rè Birmingham and District Land Co. and Allday,* 15 Eng. Rul. Cas. 285, *Davis* v. *Leicester,* 63 L. J. Ch. Div. (N. S.) 440, and *MacKenzie* v. *Childers,* 59 L. J. Ch. Div. (N. S.) 188, are all instances where the restrictions were expressly set out in the advertisement of an auction sale to include the whole tract, all by the authority of the owners, and this was held to show a general scheme by which the owner was also bound. A careful examination of all these authorities cited by the plaintiff show that they depend upon the personal declarations of the defendant, and not upon the authority of an alleged agent.

Other cases like *Wilson* v. *McCarthy,* 66 Or. 498 (134 Pac. 1189), and *Owen* v. *Jones,* 68 Or. 311 (136 Pac. 332), are suits to rescind a contract on account of the fraudulent conduct of the agent of the defend-

ant upon which the latter relies. As before stated, in the present juncture, the plaintiff does not seek to rescind, but would bind the defendant by the unauthorized act of one assuming to be an agent, when the law casts upon the plaintiff the knowledge that his authority must be in writing. *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302), was decided on the ground that no limitations having been placed on the authority of a broker employed to find a purchaser for land, his representations as to the amount of timber on the premises bound the defendant in a suit to rescind. Here, the alleged agent was not representing the quality of the land, but was trying to impose a burden upon it and to fetter the estate of the defendants therein. This was something beyond his actual authority, which the law requires to be in writing. Lombard had a right to impose a condition upon one grantee and not upon another, and to reserve, as he did, some of his property from the operation of the contract of agency. In the cases of *Mulligan* v. *Jordan,* 50 N. J. Eq. 363 (24 Atl. 543), and *Haines* v. *Einwachter* (N. J. Ch.), 55 Atl. 38, it was held that a general plan of improvement is not established by the fact that the same condition is inserted in each deed for distinct tracts. There is no privity of estate between the several grantees of the defendants who by separate deeds took under like restrictions, and if nothing more is shown, it is not sufficient to establish a general building scheme limited as the plaintiff contends. The property of Lombard was his to deal with as he chose, so long as he imposed no unlawful restriction upon those who took title from him. Each individual accepted his conveyance with the condition annexed without reference to any other grantee; and while, as in *Duester* v. *Alvin,* 74 Or. 544 (145 Pac.

660), one grantee holding under such a grant might enforce the same clause in the deed of an adjacent grantee, there is no obligation resting upon the defendant Lombard as to his other holdings not included in the terms of his contract. We find much in the plaintiff's brief about Lombard accepting the benefit of the contract and being also subject to its burdens. This, however, is not *apropos,* for, as we have shown by our statute, there is no competent evidence of the contract the plaintiff avers. More than this, ratification depends upon knowledge of all for which approval is sought, and there is no evidence that Lombard was aware of Clark's statement to the plaintiff.

We determine that the plaintiff is not successful in his undertaking to ingraft upon his contract and deed an additional clause controlling Lombard, concerning his other property, on the ground that the conveyances from him to the plaintiff must be considered as including all the conditions affecting the grantor. Again, because the endeavor of the alleged agent to impose such a condition on other premises involved an agreement concerning real property, it was void because his authority was not in writing. The conclusion is that the decree of the Circuit Court must be reversed and the suit dismissed. REVERSED. SUIT DISMISSED.