Argued at Pendleton October 27, affirmed November 25, rehearing denied December 23, 1919.

## CRANSTON v. CALIFORNIA INS. CO.

(185 Pac. 292.)

**Pleading—Construction of Contract Set Out in Complaint.**

1.  Where plaintiff pleads a conclusion of fact as to the nature of the contract set out in the complaint, it is the duty of the court to consider the language of the instrument itself and give it the proper legal construction.

**Insurance—Personal Contract by Broker to Procure Insurance.**

2.  A letter, signed by a firm of insurance brokers, stating that, 'pending receipt of our covering notes, this will serve to protect you against loss * * from fire" on certain property, "coverings being in"

defendant company, did not bind defendant, since on its face it did not amount to anything except the personal promise of the brokers to procure from defendant·certain insurance for plaintiffs.

## Insurance—Existing Law as Part of Contract.

3. Under the presumption of Section 799, subdivision 34, L. O. L., "that the law has been obeyed," where insurance company's "covering note" provided that the insurance was subject to all the conditions of a certain kind of policy used by insurer, it must be presumed that the policy contained the provisions enjoined by the standard policy law (Laws 1911, p. 279), such as provision as to forfeiture on change in insured's interest, title, or possession.

## Insurance—Automobile Fire Insurance—Change of Ownership Defense.

4. Where insured automobile dealer sold and delivered an insured car to one who drove it to another state without the knowledge or consent of the insurer, and it was there, destroyed by fire, the insurer was not liable for the loss, under provision forfeiting for change of interest, title or possession.

[As to the validity and construction of automobile insurance policies, see notes in Ann. Cas. 1915A, 627; Ann. Cas. 1917D, 53.]

## Insurance—Contract by Brokers Without Authority to Act for Insurer.

5. Where insurance brokers had never before acted as agents for defendant insurance company, and did not represent to plaintiffs, insured, that they had any authority to act for or on behalf of defendant, and the instrument, alleged to bind defendant, wherein brokers promised to insure automobiles, does not purport to represent such authority as against the defendant, the case is not one of an undisclosed principal to be proceeded against upon discovery of identity.

## Insurance—Proposal to Take Insurance and Counter Offer.

6. Where insurance brokers sent to defendant insurance company a copy of their letter to plaintiff, which merely stated they would protect plaintiff from fire loss pending receipt of their covering notes, the company, never having had any connection with the brokers, was justified in treating it as a proposal to take insurance, and since, in view of the requirements of the standard policy law (Laws 1911, p. 279), it could not be presumed that defendant violated the law and assented to the copy of a letter as an insurance contract, a policy and covering notes which it sent in reply amounted simply to a counter proposition, which would not give rise to a contract, unless accepted.

## Insurance—Mere Payment of Premium Does not Create Insurance Contract.

7. Where insurer's counter offer, embodied in the policy and covering notes it sent to brokers applying for insurance for plaintiff, was not accepted by plaintiff, plaintiff's payment of premium would confer no rights, except the right to recover the payment as for money had and received.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

The defendant is a California insurance corporation. After reciting this fact the complaint proceeds as follows:

"That heretofore and on or about the 23d day of June, 1916, in consideration of the premium then paid and for value received, the above named defendant duly and regularly made, executed and delivered to plaintiffs their certain certificate of insurance in words and figures following, to wit:

" 'HUGHES & COMPANY,

" 'Real Estate and Insurance Agents.

" 'Baker, Oregon, June 23, 1916.

" 'Messrs. Cranston & Masters,

" 'Baker, Oregon.

" 'Gentlemen:

" 'Pending receipt of our covering notes this will serve to protect you against loss or damage resulting from fire or theft on the following cars in the amount indicated from noon of this date, said coverings being in the California Fire Insurance Company, viz.:

" 'Studebaker Six 17 Series No. 645718, $970.00, rate 1.25.

" 'Thanking you for the favor of this business and soliciting your further commands, we beg to remain,

" 'Very truly yours,

" '(Signed) HUGHES & Co.'

"And promised and agreed to indemnify plaintiffs against loss by fire in the said sum of $970.00, and that no covering notes as aforesaid were ever issued to or received by plaintiffs or either of them, and that when said insurance was issued and when said loss by fire occurred the plaintiffs were the owners of said automobile which was of the value of $1,200.00."

The primary pleadings of the plaintiffs concludes with the statement that the automobile in question was destroyed by fire about September 6, 1916, of which

fact the plaintiffs notified the defendant and presented proof of loss, but the defendant refused to pay them therefor.

The answer traverses the whole complaint except the allegation about the corporate character of the defendant. It affirmatively alleges the defendant's version of the transaction, to the effect that at the time mentioned in the complaint the plaintiffs applied to Hughes & Company for insurance; that the latter executed the instrument quoted in the complaint, without any authority whatever from the defendant to do so; that Hughes & Company delivered the instrument to the plaintiffs as a temporary device to serve only until the proper forms could be obtained from the defendant covering the insurance on the car in question in what is known as a dealer's policy or a "floater" policy, to be evidenced in part by what are known as covering notes; that the defendant issued such documents and placed them in the hands of Hughes & Company for delivery to the plaintiffs; but that although the plaintiffs well knew the documents issued by the defendant were in possession of Hughes & Company ready for delivery, they waived delivery of the same. The answer further sets up the provisions of the policy in part as prescribed in the standard policy law of this state, and avers matter showing a breach of the contract by the plaintiffs, in that they had sold the car and placed it in the actual and exclusive possession of the purchaser, all without the knowledge or consent of the defendant.

This matter is denied by the reply, and other allegations are made by way of estoppel. At the close of the testimony for the plaintiffs the court sustained a motion for a judgment of involuntary nonsuit and the plaintiffs appeal.                          AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. O. B. Mount.*

For respondent there was a brief over the names of *Mr. William Smith* and *Mr. J. J. Heilner,* with an oral argument by *Mr. Smith.*

BURNETT, J.—1. As stated, the instrument upon which the plaintiffs rely is set out at large in the complaint. It is true, the pleading says that the defendant made this instrument and thereby promised and agreed to indemnify the plaintiffs against loss by fire, etc. In *Somers* v. *Hanson,* 78 Or. 429 (153 Pac. 43), Mr. Chief Justice MOORE declared the law of such a pleading in these words:

"When the contract sued upon is set out *in haec verba,* it will be so construed that its legal effect will be recognized. If the writing is thus declared upon, it is superfluous to state what its legal effect is: 4 Ency. Pl. & Pr. 918. If there be any discrepancy between the averments of a pleading and the terms of a writing properly identified or attached to a statement of facts constituting a cause of action or a defense, the language of the exhibit will control in determining its legal effect: 31 Cyc. 563; *Patrick* v. *Colorado Smelting Co.,* 20 Colo. 268 (38 Pac. 236); *Lewy* v. *Wilkinson,* 135 La. 105, 64 South. 1003). The promissory note having, in effect, been set forth in the complaint in the exact language employed in the negotiable instrument, the allegation of the legal effect of the writing as stated in the pleading must be disregarded as superfluous and variant."

2. Taking, then, the language of the instrument itself, it is the duty of the court as a matter of law to give it the proper legal construction. The wording of this document contains nothing binding upon the defendant. It is purely the statement of Hughes &

Company. The' complaint seems to be drawn upon the theory that Hughes & Company was the agent of the defendant.

"A contract by an agent should be in the name of his principal, so as to show beyond question that it is the principal who contracts, and not the agent, since the intention of the parties, as legally evidenced by the terms of the contract itself, is always the governing consideration in determining who is bound by the contract. It is not alone sufficient that the agent has authority to bind the principal, but he must in fact make the contract the obligation of the principal in terms, in order to bind him. No particular form of words is necessary for this purpose; the material thing is that it appear on the face of the instrument that it is the principal who makes the grant or incurs the obligation, which induces the contract to be made by the other party": 2 C. J. 670.

"Generally the agent and not the principal is personally bound by a contract containing apt words to bind him, if he executes the contract in his own name and makes the promises and undertakings his own without any suggestion or indication that he is contracting for another, although he recites that he is an agent or the other party knows that he is such, and the agent also will be liable when he so executes the contract as in terms to bind both himself and the principal; and it has been held that where the contract is signed by the agent with an affix indicating his agency and principal, and the consideration moves to the principal, both may be held liable": 2 C. J. 682.

On its face the instrument pleaded does not amount to anything except the personal promise of Hughes & Company. It indicates nothing more than that Hughes & Company promises as an insurance broker to procure from the defendant certain insurance in favor of the plaintiffs; containing no language which is binding upon the defendant, it cannot be given a legal effect to charge the company. In view of the

doctrine announced by Mr. Chief Justice MOORE in *Somers* v. *Hanson,* 78 Or. 429 (153 Pac. 43), the complaint does not state facts sufficient to constitute a cause of action against the defendant.

3, 4. On the evidence as disclosed by the record the plaintiffs are not in any better plight. Their narration of the history of the document upon which they rely is substantially as follows: They were dealers in automobiles at the time in question. Having received a new stock of six machines, they telephoned to a woman employee in the office of Hughes & Company, saying they wished some insurance on these cars. She went to their place of business and with the assistance of one of the firm took the numbers of the machines and returned to her office, where she wrote out and mailed to the plaintiffs the instrument in question. Afterwards, without the knowledge or consent of the company directly or through any agency so far as the evidence discloses, the plaintiffs parted with possession of the automobile, delivering it to George Duncan under a contract for its purchase by the latter, who drove it into Nevada, where it was destroyed by fire. This of itself would defeat plaintiffs' recovery, because it would constitute a breach of the required provisions mentioned in the standard policy law making the "entire policy void unless otherwise provided by agreement indorsed hereon or added hereto * * if any change, other than by death of an insured, take place in the interest, title or possession of the subject of insurance": Laws 1911, Chap. 175. The "covering note," so called, which the defendant issued in connection with the policy, is in evidence and contains this provision:

"It being understood and agreed that this insurance is subject to all the terms and conditions of the

automobile floater policy now in use by the California Insurance Company covering fire, theft and transportation.''

We must assume ''that the law has been obeyed'' (Section 779, subdivision 34, L. O. L.), and hence that the policy contains the provisions enjoined by the standard policy law. This being true, the fact that the car was burned while out of the possession of the plaintiffs without the knowledge or consent of the company justifies the judgment of nonsuit.

5. Hughes & Company had never acted as the agent of the defendant company in any transaction up to the execution of the instrument quoted in the complaint and had never had any business with the defendant. The evidence is clear and explicit on that point. There is no testimony even that Hughes & Company represented to the plaintiffs that it had any authority to act for or on behalf of the defendant and, as we have seen, the instrument in question does not purport to represent any such authority as against the defendant. Hence, this is not a case of undisclosed principal. It is true that if in fact there is an agency and it is concealed, anyone dealing with the agent may, upon discovering the principal, proceed against the latter and not against the agent: *Kayton* v. *Barnett,* 116 N. Y. 625 (23 N. E. 24). But, as said in 2 C. J. 842:

''The converse of the above rule is also true. Accordingly, it is the rule that, in the absence of estoppel or ratification, an undisclosed principal is not liable on the contracts of one assuming without authority to act for him, or on contracts made by his agent in excess of his authority or not in the course of his employment.''

It is also said in 2 C. J. 562:

"It follows from the above rules that as a general rule every person who undertakes to deal with an alleged agent is, by the mere fact of the agency, put upon inquiry, and must discover at his peril that it is in its nature and extent sufficient to permit the agent to do the proposed act, and that its source can be traced to the will of the alleged principal, particularly where he is dealing with an agent whose authority he knows to be special, or where it is his first transaction with the agent, or the circumstances connected with the agency are such as should put him on inquiry, as where it appears from the circumstances of the particular business that the interests of the agent and principal are necessarily adverse, or that the authority is of an unusual, improbable, or extraordinary nature. Such a person is to be regarded as dealing with the power before him, and must, at his peril, observe that the act done by the agent is legally identical with the act authorized by the power."

This text is supported by some hundreds of authorities cited in the note. Our own decisions inculcate the same doctrine: *Reid* v. *Alaska Packing Co.,* 47 Or. 215 (83 Pac. 139); *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961); *Roberts* v. *Lombard,* 78 Or. 100 (152 Pac. 499); *Bessler* v. *Derby,* 80 Or. 513 (157 Pac. 791).

6. The only individual with whom the plaintiffs dealt in securing the instrument upon which they sued was the employee of Hughes & Company. She was called by the plaintiffs as their own witness. After having narrated that she had heard of the loss by fire and stating that she knew about when the policy of insurance was written, she was asked this question:

"How did the company get the information with reference to the fact that the policy of insurance was written for Cranston & Masters as therein stated?"

And replied:

"Why, through the sending of the copy, as I remember sending a copy of this first white slip that we had

there, I sent that to their general agent in Portland. I sent them the information, the numbers; I don't remember whether it was a copy of this letter. I wrote and told them and gave them these numbers and he forwarded them to Frisco, and then they sent the covering notes back."

Speaking of the instrument upon which the plaintiffs rely, she said she did not know where the copy of it could be, that she had not destroyed it. She further said:

"I am not responsible for anything after I put it away, and whether there was a copy of that made I don't remember. I had the numbers of the cars, and I sent the numbers; and I don't remember whether I sent a copy or not to the company."

She testified that no agent of the company had anything to do with making out the plaintiffs' instrument. Be that as it may, and conceding for the sake of argument that Hughes & Company sent a copy of the instrument quoted in the complaint to the defendant; yet, not having hitherto had any connection with Hughes & Company, the defendant had a right to treat it as a proposal to take insurance, and the testimony on behalf of the plaintiffs shows that the defendant in response to this offer sent back to Hughes & Company a policy and covering notes insuring the automobile.

The act of February 23, 1911, popularly known as part of the standard policy law of this state, provides that after September 1, 1911, no fire insurance company, corporation or association, their officers or agents, shall make, issue, use or deliver for use, any fire insurance policy or renewal of any fire insurance policy on property in this state, except such as shall conform to the conditions named in the act, which

shall be contained on the second page of the policies and which shall form a portion of the contract between insurer and the insured. The conditions required are then set forth at large in the act. We cannot presume that the defendant company deliberately violated the law and assented to the instrument upon which the plaintiffs rely. The undisputed fact that it sent to Hughes & Company a policy and covering notes amounts simply to a counter proposition in answer to the offer embodied in the plaintiffs' instrument. At any rate, the evidence is conclusive in legal effect that the minds of the parties never met on the terms of a contract of insurance. It is true, as appears in evidence, that some time after the instrument described in the complaint was drawn as there appears, the defendant appointed Hughes & Company its agent at Baker, but that was a subsequent transaction and did not include what had been previously done by Hughes & Company at the instance of the plaintiffs.

7. The evidence is quite vague about the payment of any premium. No amount paid is stated anywhere in the testimony. The plaintiff Masters, testifying on behalf of the plaintiffs, was asked this question:

"Did you pay any premiums of insurance to Hughes & Company on this instrument which is marked Plaintiffs' Exhibit '1'?" (referring to the instrument quoted in the complaint).

He answered:

"We always paid our insurance bill the first of every month. They generally sent us the bill, and it was paid the first of every month or about that time."

The plaintiff Cranston testified as follows:

"Q. From what time did you pay premiums upon these cars under plaintiffs' Exhibit '1' [meaning the instrument set out in the complaint]?

"A. I don't know the definite dates.

"Q. From what time did you pay?

"A. From June 23, 1916."

Payment to Hughes & Company on the contract pleaded would not be payment to the defendant, for it is the contract of Hughes & Company, and not that of the defendant. M. S. Hughes, who, it seems, was the sole member of the firm of Hughes & Company, testified that both before and after the loss a Miss Thompson was in his employ and collected premiums for him in his insurance business, depositing them in the bank to the credit of Hughes & Company. The daughter of Hughes, who was at another time in his employ, testified thus:

"Q. While the California Insurance Company was doing business with Hughes & Company under your management, who collected the premiums?

"A. Why, I did; if there were any collected, I did it.

"Q. And who remitted the premiums to the company?

"A. I did; Mr. Hughes didn't have anything to do with it."

There is no other evidence about payment of any premium. It will be noted that what we have set out is very indefinite as to who received the payment, and there is no showing that the defendant received any of it. Moreover, if, as the plaintiffs contend, it was paid on the instrument they quote, it was paid on their contract with Hughes & Company, and not on any agreement with the defendant. Besides all that, even if the defendant received the money with the application for the insurance, it had a right to rely upon its counter offer as against incurring any obligation,

unless the plaintiffs seasonably rejected it. Having received the application on behalf of the plaintiffs through Hughes & Company, the defendant had a right to return its counter offer to the same source, and under these circumstances the least that can be said is that until the negotiations are either closed by the acceptance of an offer as made on one side, or they are broken off, no contract would arise; and the utmost the plaintiffs could do would be to recover the payment as for money had and received.

The evidence does not show that the minds of the parties met upon the same proposition and hence no contract was proved. The judgment of nonsuit was right and should be affirmed.

AFFIRMED. REHEARING DENIED.

BEAN, J., concurs in the result.