PROVOSTY, J.
This suit is upon two notes for $1,666.66 each, and one for $5,000. They are promissory notes in the simplest form, containing nothing on their face but the mention of the date and place when and where executed and the promise to pay to the order, of W. H. Powell the amount named, one year after date, followed by the signature of Powell Bros. & Sanders Company, Limited, and nothing on their back but the signature of said company, and those of D. G. Sanders, T. C. Wingate, and defendant, and, under or following these signatures, an indorsement over to plaintiff in these words:
“Pay to the order of Gus Lewy. W. H. Powell.”
[1-4] Defendant filed an exception of no cause of action. This exception was referred to the merits, notwithstanding the fact that an exception of no cause of action must be disposed of on the face of the petition; that no evidence can be considered in connection with it. Said exception was .well taken, and should have been sustained. The notes, being annexed to, and made part of, the petition, show that defendant’s liability is as indorser, and not as surety; and the petition does not contain the allegation that notice of the presentment of the notes for payment was given to the defendant — an allegation which this court has held must be made expressly for showing a cause of action against an indorser. Wisdom & Levy v. Bille, 120 La. 700, 45 South. 554. It only alleges that the notes were duly protested. True it contains also the allegation that the defendant obligated himself as surety; but the notes show differently; and it is well settled that documents annexed to a petition control the averments of the petition founded upon them. Had the procés verbal of the protest been, like the notes, annexed to, and made part of, the petition, it might have constituted a sufficient allegation that this notice had been given; but it was only alleged to be “filed herewith,” and hence was no part of the petition. The trial court did not pass upon this exception at all (notwithstanding that defendant had expressly and guardedly reserved it in his answer), but decided the case upon “the law and the evidence.” Defendant took no appeal from the judgment *110 which thus overlooked this exception and has not filed in this court any answer to the appeal. We, therefore, are not in a position to pass upon the exception, and have noticed it merely for the purpose of again calling the attention of our brethren of the trial courts to the advisability and importance of disposing of such exceptions on the face of the papers, and not by referring them to the merits.
On the merits, the case was elaborately contested on the defense of the notes being null because of having been obtained through misrepresentation and fraud. In view of this defense having been the one upon which the case was mainly contested, and upon which the large record was made up, and of its being the one to which nine-tenths of the briefs is devoted, we have thought best to notice it, although the doing so is not necessary for disposing of the case. The facts, in that connection, are these:
Powell was president of the Powell Bros. & Sanders Company, which was a sawmill corporation, owning a sawmill, a store, timber lands, and a lot of lumber on its yards. It was placed by the state court in the hands of a receiver, who was the same Wingate who is indorser on the notes. After the company had been under the management of the receiver for something over a year, it made an arrangement with D. G. Sanders, the indorser on the notes, by which Sanders was to investigate the affairs of the company, and, if he found them satisfactory, was to furnish it the money necessary for taking it out of the hands of the receiver. This is not the same Sanders whose name figures in that of the company. He made this investigation, but says it was not “very satisfactory.” It was satisfactory enough to lead him to furnish some $150,000. By means of this money, the company obtained its release from the receivership, and resumed operations. It operated for some three months, until the said D. G. Sanders and Powell had a falling out. Sanders then combined with other creditors, in an effort to have the receivership reinstated; but, failing in this, he addressed himself to the federal court in a like effort; and it was pending this application to the federal court, and by way of settlement and compromise of this litigation, that the agreement in pursuance of which the notes sued on were given was entered into. By its terms Powell retired from the presidency of the company and severed his connection altogether with it, transferring his stock to Sanders, Wingate, and Hicks.
[5] The contention of defendant is that Powell misrepresented the amount and value of the assets of the company. This contention does not appear to us to be even plausible. As a necessary incident to the receivership, a complete inventory of the affairs of this company had had to .be made. This inventory was readily accessible to all. Win-gate, as receiver, must be conclusively presumed to have informed himself as to the condition of those affairs; and, since he, Sanders, and Hicks were acting together in this transaction — each acting for, and representing, all — this knowledge of his is conclusively imputable to his said associates. Sanders had made an investigation of these same affairs. True, between the time of this investigation and of the discharge of Wingate as receiver, which occurred at about the same time, and the time of the compromise with Powell, some three months elapsed, during which Powell was in charge of the affairs of the company; but it is not pretended that any change took place in these affairs during these three months, except that it is said that the stock of goods in the store — an altogether, minor item — was greatly depleted. The complaints are that the quantity and quality of the lumber on the yards was misrepresented by Powell; that the quality of timber on the lands was misrepresented; that the titles *112 to much of the lands was not good, etc., etc. Nothing shows that Powell was better informed than Wingate as to the titles, or than Sanders as to the lumber and timber, or as to the condition of the stock in the store. The store was in the charge of employes of the company, who, so far as the record shows, would have furnished information as to the condition of the stock just as readily to Wingate or Sanders as to Powell. Sanders, under the contract by which he furnished the $150,000, acquired an interest in the business which would have entitled him to require this information to be furnished him. There is no certainty that Powell made any misrepresentation,’ and still less that, if he made any, he did so intentionally. Wingate, Sanders, and Hicks made no effort to rescind their bargain with Powell. They took active charge, and, even after the lapse of 12 months, they were still paying the notes to Powell without demur. It is only after this suit had been brought upon the notes that complaint was heard.
[6] Defendant and his counsel discuss the case as if the transaction had been a sale pure and simple; whereas it was the compromise of a litigation, and Powell was not merely selling his interest in the corporation, but was relinquishing his control of the corporation, and the other parties to the agreement were obtaining this control. This control may have been valuable; in fact, may have been, itself, worth the amount of these notes, irrespective altogether of whether the corporation was solvent or insolvent. Fraud, no doubt, is fraud, and vitiates all acts it enters into, compromises as well as sales; but, in the appreciation of the alleged acts of misrepresentation in any particular case, it makes quite a difference whether the parties, in entering into their contract, acted in confidence, relying easily upon each other’s statements, or dealt at arm’s length, as in the compromise of a litigation, when each party is to be supposed to have acted more upon his own knowledge of the matter involved than upon any information derived from his adversary. From all the circumstances of the case, it is eyident that Wingate and Sanders were acting on their own knowledge of the situation, and not upon the mere statements of Powell.
In Exchange Bank v. Williams, 120 La. 901, 45 South. 935, this court said:
“One may engage in a business transaction withhis eyes closed if it pleases Mm, but, if no unfair advantage be taken, there is no reason why he should thereafter complain of a lack of information, which he might readily have obtained if he had kept his eyes open. Where one undertakes to transfer only the interest in particular property that he possesses, and the transferee is in position to know as well as he the extent of that interest, and both parties act in good faith, the transferee has no just cause of complaint if the interest acquired by him proves to be less valuable than he expected.”
See, also, Cypress Co. v. Shadel, 52 La. Ann. 2094, 28 South. 292.
[7] But there is a peremptory reason, founded on law, why the makers and indorsers of these notes cannot refuse to pay them on the ground of fraud or want of consideration. The notes cannot be thus annulled without the contract in pursuance of which they were given, and part of which they are, be annulled at the same time; and this cannot now be done, because most of the property of the corporation has been disposed of, and the corporation has practically ceased to exist, and it would therefore be impossible to replace the parties in the position they occupied at the time of the contract.
“The contract can only be rescinded where it is possible to put the parties back to their original position and with their original rights. A. contract voidable for fraud cannot be avoided when the other party cannot be restored to his status quo; for a contract cannot be rescinded in part and stand good for the residue. If it cannot be rescinded in toto, it cannot be rescinded at all; but the party complaining of the nonperformance, or of the fraud, must resort to an action in damages.
*114 “A party cannot affirm a contract in part and repudiate it in part. He cannot accept the benefits on the one hand while he shirks the disadvantages on the other.” 9 Cyc. 437, 438.
See, also, Pugh v. Cantey, 33 La. Ann. 786; Poche v. N. O. Home, etc., 52 La. Ann. 1287, 27 South. 797; Miguez v. Delcambre, 125 La. 176-191, 51 South. 108; Latham v. Hicky, 21 La. Ann. 425.
[8] Another defense, which we notice simply because of its having been so strenuously urged, is that defendant was released by virtue of a compromise made by W. H. Powell with T. C. Wingate, by which the latter was released. Defendant contends that Wingate was a debtor in solido with him on the notes, and that the release of one debtor in solido released the others.
A sufficient answer to that contention is that coindorsers are not debtors in solido. Jacobs v. Williams, 12 Rob. 183; McCalop v. Newcomb, 2 La. Ann. 332; Hickman v. Stafford, 2 La. Ann. 793; Barrow v. Shields, 13 La. Ann. 57-69; N. O. & C. R. Co. v. Chaney, 3 La. Ann. 262.
The other defenses are: First, that timely presentment of the notes for payment was not made and notice of their dishonor was not given, as required by the commercial law for holding an indorser; 'and, second, that the notes have been extinguished by compensation.
[9] In opposition to the first of these defenses, plaintiff contends that the defendant signed the notes as surety, and not as indorser, and that there was timely presentment for payment and notice of dishonor as to the $5,000 note, though not as to the other two.
The petition alleges that:
“As a material part of said agreement and obligation, the aforesaid John D. Wilkinson, together with D. G. Sanders and T. C. Wingate, signed the aforesaid promissory notes as sureties, guaranteeing the payment thereof.”
But that allegation is not substantiated by anything in the record. Not a word was said in the course of the transaction in pursuance of which the notes were given with regard to whether defendant should sign as surety or merely as indorser, and nothing in the circumstances which led up to, and attended, the execution of the notes throws any light whatever on that point. Powell, in whose favor the notes were made, testifies that he required the names of Wingate and Wilkinson upon them, and that he does not know whether these parties signed as indorsers or as sureties. Defendant and Sanders testify that they signed as indorsers.
For pretending the contrary, plaintiff relies exclusively upon the following statement, made by defendant in a letter to his friend, T. 0. Wingate;
“I am surety on these notes.”
In this letter defendant was informing Wingate of the consent of Powell to accept $4,000 in full of the notes, and was offering to furnish half of this sum if Wingate would furnish the other half, and was urging Win-gate to do so. Under these circumstances, it is evident that, by saying that he was a surety on the notes, he meant no more than that he was liable upon them. As between him and Wingate, who knew perfectly well that he had indorsed as a mere matter of friendly accommodation, there was no occasion for giving any thought to whether his liability was as surety or indorser. The only thing needing to be thought of and expressed was that he was liable; and he expressed that idea by saying that he was surety.
Moreover, it would, in our opinion, make no difference that he had at that time believed that he was liable as surety, and had so admitted or declared; for the character of his liability is to be determined not from what he at one time believed it to be, but from what, upon the facts and circumstances of the case, it in reality is.
In reality his liability is as indorser. Sec *116 tion 63 of Act 64, p. 157, of 1904 (the Negotiable Instruments Act), provides that:
“A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.”
Nothing on these notes indicates that defendant intended to bind himself otherwise than as indorser; nor does anything dehors the notes so indicate, conceding for argument that evidence dehors the notes themselves can be admitted to show such an intention, as to which, see Neosho Mining Co. v. Farmers’ Co-op. Co., 130 La. 949, 58 South. 825.
Defendant’s liability, then, was as indorser ; and we pass to the next question, whether due and timely presentment for payment and notice of dishonor was had.
[10] There was none at all as to the small notes. As to the large one, there was, but not timely. It was one day too late. The note is dated November 8, 1908, and made payable 12 months after date. It was presented on November 9, 1909. By sections 71 and 85 of said Act No. 64 of 1904, presentment for payment must be made on the day the note falls due, without grace; and by section 86:
“The time of payment is determined by excluding the day from' which the time is to begin to run, and by including the day of payment.”
If, in this case, the' day from which the time began to run 'were not excluded, the note would have matured on the 7th of the following November; for otherwise there would be in the one year allowed for its payment two 8ths of November. If a note dated December 31st is payable in one year, it must be paid on the 31st of December the following year, not on the 1st of January of the second year; otherwise the maker would have had one full year and one day in which to pay.
[11] Passing to the next defense, defendant pleads in compensation three notes; one for $3,298.78, dated October 20, 1905, due 30 days after date, with 8 per cent, interest from date; another for $3,000, dated November 9, 1905, and due 30 days after date, with like interest; and another for $500, dated July 11, 1907, due 90 days after date.
Plaintiff resists this plea on the grounds that these notes were prescribed at the time they were thus pleaded, and that the two large ones are not the notes of Powell, but of the corporation, Powell Bros. & Sanders Company.
As to the prescription: Defendant, by his own testimony, uncontradieted, and, as we understand, unchallenged, fixes the date when he acquired these notes as having been before the maturity of the $5,000 note. If so, they were not prescribed when he acquired them; for the $5,000 note matured on the 8th of November, 1908. That they were prescribed on their face at the time they were pleaded in compensation is immaterial, since they had then long been extinguished by compensation pro tanto with the notes sued on, in the same way that the latter notes had been extinguished by compensation with them. These reciprocal obligations were both liquidated debts, due and payable; compensation, therefore, took place between them the moment they were held by the two parties respectively. C. C. art. 2208.
[12] Plaintiff is in error in saying that the said notes of Powell Bros. & Sanders, thus pleaded in compensation, were not a debt of W. H. Powell. He was indorser upon them, with waiver of “demand, protest, and notice of protest,” and was .therefore unconditionally bound upon them. Act No. 64 of 1904, § 3; Union Nat. Bank v. Lee, 33 La. Ann. 301; Bank v. Grant, 48 La. Ann. 18, 18 South. 705. Powell was still holder of the $5,000 note at its maturity, for it was protested at his instance as holder (the notary’s certificate of protest so recites); and this, according to the uncontradicted testimony of Wilkinson, was *118 after the latter had acquired the notes pleaded in compensation.
Plaintiff acquired the $5,000 note some time after its maturity, and therefore after it had been extinguished by compensation.
The judgment appealed from is affirmed; plaintiff to pay all costs.
O’NIELL, J., takes no part.