Frank H. Caraher, Appellant, v. First Guardian Company, Appellee.

Gen. No. 36,089.

Heard in the second division of this court for the first district at the June term, 1932. Opinion filed November 22, 1932.

HOGAN & SIMON, for appellant.

No appearance for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Frank H. Caraher, plaintiff, sued First Guardian Company, a corporation, defendant, in assumpsit. The plaintiff, by leave of court, filed an amended declaration, to which the defendant filed a general demurrer,

which was sustained, and the plaintiff electing to stand
by his amended declaration, judgment for the defend-
ant was entered, and plaintiff has appealed.

In determining the one contention raised by this
appeal it is only necessary to state the following alle-
gations of the amended declaration: That on Febru-
ary 13, 1929, the defendant maintained an office in
Chicago and carried on a business within this State,
and that by its agents it knowingly sold to the plain-
tiff a note of the Continental States Utilities, Inc., a
corporation, licensed and existing under the laws of
Maryland, ''for which a certain certificate was issued
by the said Continental States Utilities, Inc., for the
aggregate sum of $1,000, which the plaintiff . . .
paid to the said defendant . . . and that the said
sale of the said note being made to the plaintiff by the
defendant in the course of a number of continued
. . . and numerous transactions of a similar nature,
namely, the sale of a great number of notes of the
Continental States Utilities, Inc.; that the note herein
referred to was commonly known and designated as
a One Year 5½% Secured Gold Note—$1,000 Dol-
lars; . . . that the defendant . . . at the time
of the . . . transaction between the plaintiff and
the defendant, nor prior nor subsequent thereto, did
not comply with the provisions of an Act of the Leg-
islature of the State of Illinois, entitled: 'An Act
relating to the sale or other disposition of Securities
and providing penalties for the violation thereof and
to repeal acts in conflict therewith,' approved and in
force June 10, 1919, the said defendant . . . had not
theretofore filed or caused to be filed in the office of the
Secretary of State of the State of Illinois, a statement
or inventory of any kind, character or description as
is required by the provisions of the said act, describing
the character of any Securities or stock intended to be
offered for sale or sold, or a statement giving a de-

tailed statement of the assets and liabilities of said Continental States Utilities, Inc., . . . or any other kind of statement or document whatsoever as is required to be filed in the office of the said Secretary of State by the said Act, . . . and the defendant, . . . sold to the plaintiff the said Gold note.'' The declaration further alleges that the Continental States Utilities, Inc., ''is not and was not a public utilities company and was not at any time engaged in the buying or selling of any commodity to the public; . . . that the said corporation was organized as and was merely a holding company for stocks and bonds of certain corporations, which stocks and bonds were bought, held and sold for a profit; . . . that the aforementioned note . . . does not come within the purview of Subsection 10 of Section 4 of Paragraph 99 of Chapter 121½ of Smith & Hurd's Revised Statutes of Illinois of 1929, in that the aforesaid note was for a period of time running more than 12 months from the date it bears; . . . that by reason of the premises and the statute in such case made and provided, the sale of the said note or security was null and void and in violation of the said Act . . . as aforesaid.'' Attached to the declaration and made a part thereof is a copy of the note in question. The plaintiff sued to recover the amount paid for the note, together with his reasonable attorney's fees.

The note is dated December 1, 1928, and it recites, *inter alia,* the following: ''Continental States Utilities, Inc., a corporation duly organized and existing under the laws of the State of Maryland, (hereinafter called the 'Company') for value received, hereby promises to pay to the bearer hereof the sum of One Thousand Dollars on the first day of December, 1929.''

The plaintiff, in his brief, states: ''At the hearing of the demurrer . . . there was but one issue, namely: Did the note which the plaintiff purchased come within the Statute, Sub-section 10 of Section 4 of

Paragraph 99 of Chapter 121½ of Smith-Hurd Illinois Revised Statutes of 1929?'' and his sole contention in this court is that the note runs for ''more than twelve months from the date of issue,'' and that the trial court erred in holding to the contrary. The plaintiff concedes that if the trial court held correctly in that regard the note came ''within the exemption of Sub-section 10 of Section 4 of Paragraph 99 of Chapter 121½ Smith-Hurd Statutes of 1929,'' and it ''need not be qualified (under the act) before being offered to the public for sale.'' The plaintiff cites no authorities in support of his contention, and merely argues that it is plain from the terms of the note that the instrument runs for ''more than twelve months from the date of issue.'' The defendant has not favored us with a brief.

It is not necessary to file any statement in the office of the Secretary of State as to securities in class A (see sec. 4 of the Blue Sky Law, Cahill's St. ch. 32, ¶ 257), and the various securities that shall be included in that class are enumerated in that section. The plaintiff states that the determination of his contention is governed by subsection 10, of sec. 4, the pertinent part of which reads as follows: '' . . . and promissory notes or commercial paper running not more than twelve months from the date of issue.'' Section 86, par. 108 of our Negotiable Instruments Act provides: ''Where the instrument is payable at a fixed period after date, after sight, or after the happening of a specified event, the time of payment is determined by excluding the day from which the time is to begin to run, and by including the date of payment.'' That section follows, verbatim, sec. 86 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 108, that now prevails in all of the States of the Union. That act followed the general rule that had been observed in this country for many years. (See *Weeks v. Hull, Admr.,* 19 Conn.

381; *Hitchings v. Edmands,* 132 Mass. 338, 339; Anderson's Dictionary of Law, p. 312.)

The language used in sub-section 10, " . . . and promissory notes or commercial paper *running* not more than twelve months *from* the date of issue," is also useful in determining the intent of the legislature. "In computing time 'from' a day, the rule is to exclude that day." (Anderson's Dictionary of Law, p. 481.) "From" is a term of exclusion unless by necessary implication it is manifestly used in a different sense. (*Bradley v. Rice,* 13 Me. 198, 201.) An officer commissioned to hold office during the term of four years *from* the 2d day of March, 1845, is in office *on* the 2d day of March, 1849. The word "from" excludes the day of date. (*Best v. Polk,* 18 Wall. 112, 119.) In *Lewy v. Wilkinson,* 135 La. 105, 64 So. 1003, the court held that a note dated December 31, payable in one year, matures on December 31 of the following year. A promissory note runs until the date of maturity, and in the instant case the note *ran* for only 12 months *from* the date of issue. If the maker of the instant note had followed the language of subsection 10 and had provided that the note was payable "twelve months from the date of issue," it would have matured on December 1, 1929, which is the date of maturity fixed by the note. Paragraph 108 states a rule of law that applies to almost countless important transactions in the commercial world, and we must presume that the legislature had that paragraph in mind when it enacted subsection 10. In fact, the very language used in the subsection indicates plainly, we think, that the rule stated in paragraph 108 was recognized and followed.

After a very careful consideration of the contention raised by the plaintiff we are satisfied that there is no merit in it. The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

KERNER, P. J., and GRIDLEY, J., concur.