### ACRES v. MONROE TRANSFER & WAREHOUSE CO., Inc., et al.
### No. 4791.

Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

Shotwell & Brown, of Monroe, and Montgomery & Montgomery, of New Orleans, for appellant.

Sholars & Gunby and Theus, Grisham, Davis & Leigh, all of Monroe, for appellees.

MILLS, Judge.

Plaintiff, an employee of the steamer Ouachita, L. V. Cooley owner and manager, brings this suit under article 2315 of the Civil Code to recover damages totaling $12,624, from the Monroe Transfer & Warehouse Company, Inc., for injuries caused by being struck by a bale of cotton being unloaded by defendant's driver from its truck. He next filed a supplemental and amended petition, alleging that he had given notice to the London Guaranty, & Accident Company, Limited, workmen's compensation insurer of his employer, of the pendency of this action. A second amended petition seeks to make the American Employers' Insurance Company, insurer of defendant against liability arising out of the accident, a party defendant. A third amended petition changes the itemization of his damages, but not the total amount.

Defendant Monroe Transfer & Warehouse Company filed an exception of prematurity based upon the failure of the petition to allege notice to his employer, owing compensation, of the institution of this suit, which oversight is corrected in the first amended petition. It then answered, denying liability, and subsequently objected to the allowance of the third amended petition on the ground that it was filed after issue joined and changes the issues. It then filed an exception of no cause and no right of action to the intervention of London Guaranty & Accident Company, Limited.

Reserving its rights under the above exception, it then answered the intervention and pleaded the prescription of one year to same.

The codefendant, American Employers' Insurance Company, excepted that plaintiff's petition discloses neither cause nor right of action. Reserving its right under said exception, it then answered plaintiff's petition. It objected to the allowance of the third amended petition as coming too late and changing the issues, and answered it, with reservation of its rights under the objection.

The London Guaranty & Accident Company, Limited, intervened, acknowledging that it carried workmen's compensation insurance on plaintiff's employer, and alleging that it has paid, and is obligated to further pay, compensation and medical expenses of plaintiff, and praying that it be subrogated to the rights of plaintiff against both defendants to the extent of its liability. In his testimony plaintiff admits that he brought this suit at the instance of intervener, which is paying him compensation at the rate of $7.80 per week.

Before the taking of testimony, the American Employers' Insurance Company reiterated its objection to the allowance of the second amended petition, and objected to any testimony being admitted on the ground that in its attempt to make them a party it disclosed no cause or right of action. The objection was overruled.

The same objection and ruling was made as to the Monroe Transfer & Warehouse Company.

The trial was had March 13, 1933. The minutes show that on February 20, 1933, by agreement, the exception of no cause or right of action filed by American Employers' Insurance Company to the original and first and second supplemental petitions is referred to the merits.

The minutes of March 13, 1933, recite that all exceptions and pleas were argued and overruled except the exceptions of no cause or right of action, which were referred to the merits without objection.

After due trial had, there was judgment, upon the law and evidence, rejecting the demands of plaintiff and of intervener, London Guaranty & Accident Company, Limited. The exceptions of no cause and no right of action were not passed upon.

Plaintiff, Andrew Acres, alone has appealed.

The American Employers' Insurance Company alone answers the appeal and asks that the exception of no cause of action filed by it be sustained and, in the alternative, that the judgment be affirmed. The only exception or plea before this court is that covered by the above answer.

■ Exceptions not passed upon below cannot be considered on appeal. Gordon v. Business Men's Racing Ass'n, 140 La. 674, 73 So. 768.

"The defendant did not insist in the lower court that her exception of no right or cause of action be passed on and made no objection to the trial judge not passing on it in advance of judgment on the merits and the exception must be deemed to have been waived and will not be considered on appeal." Gardner v. Roberts, 8 La. App. 507.

In Lewy v. Wilkinson, 135 La. 105, 64 So. 1003, 1004, it is held that where an exception of no cause of action is referred to the merits and the case decided on "the law and the evidence," the exception is overlooked. The practice of referring such exceptions to the merits is severely reprobated.

The exception in this case having been referred to the merits by agreement and without objection, and not directly passed upon by the lower court, will not be considered here. It would be useless to do so, as we find for defendants on the merits. Nor is it necessary to pass upon the serious question of notice to defendant insurer.

The only issue presented then by the appeal is the judgment on the merits as between plaintiff Acres and defendants.

On October 22, 1931, Norman Gaines, acting within the scope of his employment, drove the truck of the Monroe Transfer & Warehouse Company, Inc., to the landing place of the steamer Ouachita, on the gently sloping river bank across the Ouachita from Monroe. The truck was loaded with twenty-one bales of cotton secured with ropes and arranged in three layers of seven bales each, which was to be shipped on the steamer. Cotton stored, pending the arrival of the boat, is stacked in tiers on the river bank. As a protection from the earth, scrap planks and boards, called dunnage, are placed on the ground beneath it. As it was Gaines' first trip, he was unaware of this customary procedure. When he arrived at the landing he backed the truck to the spot pointed out by the agents of the boat as the place where they wanted the cotton unloaded. It was usual for the drivers of trucks to unload the cotton and for the boat employees to stack it. After spotting the truck, the boat agent, Mr. Breece, called four of its laborers from another part of the yard to stack the cotton as it was dumped off. Mr. Breece then went back into the office, did not take any part in the unloading, and did not see the accident.

Of the four laborers, Davenport walked along the top of a tier of cotton to within about ten feet of the truck. In explanation of his not seeing or hearing much, he suggests that he probably was "ratting" a little bit. The other three walked along the aisle between the tiers. Ed Tillman mounted the truck and assisted Gaines in loosening the

bales, while plaintiff Acres and Barney Williams went past the truck 15 or 20 feet to gather up planks for dunnage. They had returned and were about to lay the planks at the rear of the truck, when a bale thrown off it by the driver, Norman Gaines, struck Acres, knocking him down and breaking his hip.

The question of liability vel non depends upon the testimony of the five negroes present as to whether Gaines was told to wait until the dunnage was placed before he started unloading, and whether or not he was told to "let it go" before he dumped the bale. From his place on top of the load he could not see the men back of the truck, and says that he did not see them getting the dunnage or know that it was customary for them to do so. He says that he was holding the bale balanced on edge and did not turn it loose until he heard some one cry: "Let it go. Everything clear, start unloading." Strangely, he was not questioned about any one telling him to wait. He says he hollered, "Look out," as he loosed the bale.

Davenport, "the ratter," did not hear any one tell the driver to wait or to start unloading, or the driver say, "Look out." He saw the bale strike Acres, who was standing with his back to the truck, and with the dunnage in his arms, talking to some one.

Ed Tillman, a witness for plaintiff, who mounted the truck to help untie the cotton, testifies that they all told Gaines to wait a minute; that he said he would wait and did wait until some one called out: "Throw it off; alright, it is ready." When he heard this last call, he had gotten down from the truck on the opposite side from Acres.

Barney Williams, who was laying the dunnage with Acres, and was also struck by the bale, says that Gaines was told to wait until the dunnage was down and that he did not hear any one give him the command to throw it off.

Plaintiff testifies that he told Gaines to wait a minute and not to start unloading until the dunnage was down. He says he went past the truck and was returning with an armful of boards when some one hollered, "Look out," and he was struck on the shoulder by the cotton. He says:

"We just asked them to wait a minute until we got ready to give orders to unload.

"Q. Did you hear anybody tell this particular man at that time not to unload it until he was given notice? A. No sir, but I asked

him to wait a minute like every truck coming it."

He did not hear Gaines answer him.

Though none of those present admit giving the word to unload, we have the positive testimony of Gaines and plaintiff's witness Tillman that such word was given.

Barney Williams says he did not hear any one say, "Throw it off." Davenport heard nothing. Acres is not directly asked and does not specifically testify that the order to unload was not given.

 Positive testimony is accorded more weight than negative.

We are satisfied that Gaines was told to wait, and that he did wait. We are not satisfied that he dumped the bale without word to do so. We think the evidence preponderates the other way. We are unable to find manifest error in the finding of the trial judge on this issue of fact.

The judgment appealed from is accordingly affirmed.