Argued January 18, affirmed February 5, 1929.

# JAMES W. CRAWFORD AND SUSAN T. CRAWFORD ET AL. *v.* C. M. SENOSKY ET AL.

(274 Pac. 306.)

For appellants there was a brief over the names of *Mr. John F. Logan* and *Mr. J. J. Fitzgerald,* with an oral argument by *Mr. Logan.*

For respondents there was a brief over the names of *Mr. Howard P. Arnest* and *Mr. James W. Crawford,* with an oral argument by *Mr. Arnest.*

BROWN, J.—1. That injunction is the proper remedy for enforcement of a valid restriction imposed on the use of land is well settled: *Duester* v. *Alvin,* 74 Or. 544 (145 Pac. 660); *Grussi* v. *Eighth Church of Christ, Scientist,* 116 Or. 336 (241 Pac. 66); *Ludgate* v. *Somerville,* 121 Or. 643 (256 Pac. 1043, 54 A. L. R. 837); *Menstell* v. *Johnson,* 125 Or. 150 (262 Pac. 853, 266 Pac. 891, 57 A. L. R. 311).

In a discussion of the case of *Duester* v. *Alvin, supra,* this court, speaking by Mr. Chief Justice Moore, said, at page 552:

"The covenant in each deed executed by the corporation was made in pursuance of a general scheme adopted by it for the purpose of preserving the addition as desirable residence property. The restriction created an equitable servitude which must be regarded as of value to the whole property. It was inserted in the deeds for the benefit of those who became owners of separate parcels, and is binding in equity on a grantee of any portion of the premises who secured a title thereto with knowledge of such restriction."

2. Restrictions on the use of real property, however, will not be enlarged or extended by construction; and all doubts must be resolved in favor of its free use, and against restriction.

3. The defendants claim that Lot 1, Block 39, was sold for taxes, and that they thereafter took title thereto, free from all liens and clear of all building restrictions.

Section 4325, Oregon Laws, reads, in part:

"Such liens (tax liens) shall have priority to and be fully paid and satisfied before any and every judgment, mortgage or other lien or claim whatsoever, except the lien for a tax for a subsequent year."

Section 4355 provides for deed on foreclosure. Section 4371, relating to sale of lands bid in by the county for taxes, reads:

"As soon as it is practicable after such sale, the sheriff shall make to the respective purchasers deeds for the several parcels of land sold to them, without charges other than the price paid for the lands, and such deeds shall vest in the purchasers title in fee thereto, and such title shall be superior to any lien, claim or charge whatever against such lands, except the lien of tax certificate of delinquency issued to an individual, subsequent to that for which the land was sold, and the taxes for the current year."

But the foreclosure of a tax lien does not cut off easements that have been carved out of one property for the benefit of another. See *Tax Lien Co.* v. *Schultze*, 213 N. Y. 9 (106 N. E. 751, Ann. Cas. 1916C, 636, L. R. A. 1915D, 1115). It was contended in that case, as here, that if there were encumbrances or easements in favor of abutting owners or encumbrancers, and affecting the tax lot sold to the purchaser, such encumbrances or easements were effectually cut off

by the judgment of foreclosure and sale, and that the judgment of foreclosure and sale was binding, not only as to questions actually litigated, but as to all questions which might have been litigated in that action. That contention, however, was put at rest by the decision of the court, which reads:

"The assessment of the lot described in the judgment did not include the easements appurtenant to the adjoining real property. The assessment of the servient estate was subject to the easements included in the assessments of the dominant estate. As a necessary consequence, it has been held that on the foreclosure of a tax lien and a sale of the premises pursuant to sections 1035–1039 of the Greater New York charter [Laws 1901C, 466, as amended by Laws 1908C, 490 and Laws 1911C, 65], private easements of light, air and access of adjoining owners over the land sold are not extinguished. If property rights which are excluded from an assessment are sold or extinguished by a tax sale, there would be a taking of property without due process of law."

The case of *Jackson* v. *Smith,* 153 App. Div. 724, (138 N. Y. Supp. 654), is an interesting case, and has been cited many times with approval. In that case it was held that the easements of adjoining owners, of light, air and access were not extinguished by a tax sale of the burdened premises, notwithstanding such owners were parties to the tax foreclosure suit. As to the meaning of the term "easement," the court there said:

"An easement is a servitude upon, and differs from an interest in, or lien upon, the land. It is not a part of, but is so much carved out of the estate in, the land, and is as much a thing apart from that estate as a parcel of the land itself conveyed from it. If the principle contended for by the respondents is sound, the owner of the dominant estate, who pays

taxes upon a valuation which includes the value of his easements, must also, to protect his easements, pay taxes assessed on another's property, although the value of the easements is necessarily excluded from the assessed valuation thereof.

"It is unnecessary to determine the precise nature of a tax title. It doubtless is in the nature of a new and independent grant from the sovereign authority (*Hefner* v. *Northwestern Life Ins. Co.* 123 U. S. 747 31 L. Ed. 309, 8 Sup. Ct. 337); but the assessment is the basis of it. The property assessed and the property conveyed upon the tax sale must be the same. If the assessment is only of the servient estate, only that can be conveyed on a tax sale; and, *vice versa,* if the conveyance on the tax sale, or on the foreclosure of a tax lien, is of all the estate or interests in the land, freed from servitude as well as liens thereon, then the assessment must be based upon the land as land, regardless of servitude as well as liens. As has been shown, in making the assessment a deduction must be made for easements, whereas none is made for liens and the like interests."

4. The defendants contend that plaintiffs have stood by while the restrictions have been violated by others. That one who has wilfully allowed a restrictive covenant to be broken by divers persons bound thereto cannot thereafter come into a court of equity for an injunction to restrain the violation of that covenant is a recognized principle of law. However, in the case at bar, it appears that the infractions of the restrictive covenant were but minor ones. In *Ewertsen* v. *Gerstenberg,* 186 Ill. 344 (57 N. E. 1051, 51 L. R. A. 310), the Supreme Court of Illinois set down its views on the subject of "restriction" in the following comprehensive statement:

"Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it or of those who derived title under him, the property, and

that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction, or, in short, it may be said that where, from all of the evidence it appears that it would be against equity to enforce the restriction by injunction, relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law.''

The writer is impressed with the soundness of this doctrine.

5. But, as held in *Landell* v. *Hamilton,* 175 Pa. St. 327 (34 Atl. 663, 34 L. R. A. 227), if the restrictive covenant is still of substantial value to a dominant estate notwithstanding the changed use of the land and buildings in the vicinity, equity will restrain the violation of that covenant, provided relief is promptly sought.

In the cause at issue, the testimony shows that the restrictions in question are yet of much value, and that, with one exception, the plaintiffs sought immediate relief at the hands of a court of equity.

6. The defendants assert that the building restrictions have been terminated by the zoning ordinances of the City of Portland. This is erroneous: *Kroner* v. *City of Portland* 116 Or. 141 (240 Pac. 536); *Ludgate* v. *Somerville,* 121 Or. 643 (54 A. L. R. 837, 256 Pac. 1043), and the decisions there cited. See, also, *Atlantic City* v. *Atlantic City Steel Pier Co.,* 62 N. J. Eq. 139 (49 Atl. 822).

7. Notice of the building restrictions in the case at bar was spread upon the public records, and the defendants are charged with knowledge thereof.

Based upon the facts of record, and the law applicable thereto, we direct an affirmance of the decree rendered by the trial court. AFFIRMED.

COSHOW, C. J., and BEAN and BELT, JJ., concur.