Argued July 20, 1933; reargued January 19; modified February 13; rehearing denied March 13, 1934

## HEITKEMPER *v.* SCHMEER ET AL.

(29 P. (2d) 540, 30 P. (2d) 1119)

*John P. Winter,* of Portland (Wm. S. Nash, of Portland, on the brief), for appellant Schmeer.

*Earl C. Bronaugh,* of Portland (Arthur L. Veazie, of Portland, on the brief), for appellant Larrowe.

*John M. Pipes,* of Portland, for respondent.

BELT, J. This suit was commenced to enjoin the violation of an alleged covenant in a trust agreement against the erection of an apartment house in a residential district. It arose under the following facts: On October 28, 1910, the plaintiff and the defendant Schmeer, together with six other persons, were the owners of certain real property in Goldsmith's addition to the city of Portland and were desirous of protecting the same against the invasion of flats or apartment houses. The Gile Investment Company owned lots 16 and 17 in block 11 of this addition and the property owners above mentioned were apprehensive that it might be used for apartment house purposes. A plan was therefore devised to purchase these two lots from the Gile Investment Company and the defendant Schmeer was delegated to handle the transaction. The interest of each property owner was to be in proportion to the amount contributed by him towards the purchase of this property. The plaintiff had a one-ninth interest therein by reason of the amount which he contributed. Acting under this plan, the two lots were purchased for $12,000, $4,500 being paid in cash and the balance of the purchase price secured by mortgage on the property. Conveyance by the Gile Investment Company was made to the defendant Schmeer as trustee on October 28, 1910, and the deed was duly recorded on the following day. Schmeer thereupon executed a declaration of trust which in part is as follows: "* * * and I do, for myself, my heirs, executors and administrators, covenant and agree to and with said parties and each of them, and with their and each of their executors, administrators, and assigns, that I will hold manage and dispose of said real property as in my judgment may seem best, and I will convey the said real property by a good and sufficient deed to the purchaser of said property when the same is sold and

after deducting any and all sums paid for assessments, taxes, and charges of every kind that may have been paid or advanced by me for the benefit of said property and the payment of said mortgage and interest, that the balance remaining shall be paid to the several parties in interest in proportion to their payments on account of the said purchase price, assessments, taxes, costs, mortgage and interest."

Contemporaneously with the execution of the above declaration of trust and as a part of the same transaction, the following instrument was executed:

"The undersigned, property owners and residents in the vicinity of the hereinbefore described real property, for the purpose of preventing the purchase of said real estate by a stranger and the possible erection thereon of an apartment house or flats, which we consider will be detrimental to the appearance and value of our several residences and lots, have appointed R. W. Schmeer our Trustee to purchase and hold the title of said real estate, and we have contributed to the said purchase price the several amounts as hereinbefore stated, and we hereby further agree to reimburse our said Trustee on demand for any and all sums paid for assessments, taxes and charges of every kind that he may pay on account of said property and said mortgage and interest.

"We hereby agree to the terms and conditions of the Declaration of Trust signed by R. W. Schmeer.
(Signed)    M. G. Thorsen
            Mrs. R. Becker, by Claude DeF. Smith,
                Attorney in Fact,
            J. R. Krausse
            Frank A. Heitkemper
            A. L. Levy
            C. J. Cook
            Wm. Gadsby."

About four years later, namely, on April 17, 1914, Mr. Schmeer wrote a letter to the plaintiff in which he

stated that he had been requested by several of the joint owners of the property to call a meeting to devise means of disposing of it and that a majority had expressed themselves as willing to sell the same for apartment house purposes, claiming that this would be the only way whereby they would be able to realize the amount of their investment. In this letter Mr. Heitkemper was requested to state whether he would be willing to sell the property for an apartment house site. On April 24, 1914, Mr. Heitkemper replied to this letter as follows:

"In reply to your kind letter of Apr. 17th will state that I would regret very much to see an apartment house put up on the 100 by 100 at 25th and Pettygrove Streets. I would much prefer to see the disposition of this property in accord with the purposes for which it was bought and the trust created.

"It may be dead property now, and there may be no sale for it as residence property, and it may be that we will have to hold it for a few years and pay taxes on it, but I am willing to do this.

"However, I would not like to be the only one to stand out, and if the others concerned would prefer to sell I would not feel like making an objection, provided we could sell for a price which would not mean a loss."

After the writing of these letters there seems to have been a lapse of about eight years before anything further was done relative to the disposition of this property. At any rate, Schmeer was unable to sell the property "for a price which would not mean a loss" to the plaintiff. The next correspondence between Mr. Schmeer and the plaintiff is evidenced by a letter dated March 23, 1922, wherein Schmeer advised Heitkemper that, at a meeting of the property owners, he had been instructed to sell the property for $7,500, with restrictions so that the property could be used only for

dwelling or apartment house purposes. Schmeer also stated in this letter that, unless objection was made in writing within the next five days, the property would be offered for sale on the terms mentioned. Mr. Heitkemper made no reply to this letter. However, the lots were not thus offered for sale.

In 1925, Mr. Heitkemper gave Mr. Schmeer an option to purchase his one-ninth interest for the sum of $500, but the same was never exercised and it expired November 1st, 1925. On January 21, 1926, Mr. Heitkemper wrote to Mr. Schmeer calling attention to the fact that his option to purchase the property had expired and stating that he ''would not be in favor to sell it for any other purpose than for residence property''. About eleven months after the date of this letter, Mr. Schmeer, who had succeeded in acquiring the interests of all of the beneficiaries under the trust agreement, with the exception of the plaintiff, again undertook to purchase the interest of Heitkemper in this property, but he refused to sell.

On November 29, 1926, the defendant Schmeer, as trustee, conveyed the north half of these two lots in question to the defendant, A. Larrowe, providing therein against the use of the same for ''any shop, store, saloon, hotel, auto garage, holding more than three machines, stable, foundry, warehouse, public laundry, factory or other place of business, or be used for the carrying on of any trade or business whatsoever,'' but excepting from such restrictions the use of the property for ''flat or apartment house purposes''.

On December 18, 1926, Mr. Schmeer wrote to the plaintiff advising him that he had sold the property to Mr. A. Larrowe for $3,500 cash, and enclosed a check for $363.42, covering the plaintiff's interest in the proceeds of the sale, after deducting commission and

expenses. During the latter part of the month of December, Larrowe commenced the erection of a three-story brick apartment house. Mr. Heitkemper sought the advice of counsel and on January 8, 1927, returned the check to Mr. Schmeer and advised him by letter that he had no authority to sell the property for the purposes of an apartment house and that necessary steps would be taken to protect his rights. On January 12, 1927, plaintiff advised the defendant Larrowe by letter that Schmeer held the property as trustee; that under the terms of the trust the property could not be sold for the purpose of erecting an apartment house thereon; and notified him not to proceed further. Mr. Larrowe, who had procured title insurance on the property, proceeded however with his construction work which was finally completed at a cost of $65,000.

On March 9, 1927, the plaintiff filed suit for an injunction. The trial court sustained a demurrer to the complaint and, upon refusal of the plaintiff to plead further, dismissed the suit. Upon appeal to this court, the decree of the lower court was reversed and the cause remanded with directions to permit the plaintiff to file an amended complaint and to compel defendants to answer within ten days thereafter. The lower court was also directed that, if upon the merits the decree be in favor of plaintiff, it should be in the alternative, namely, that defendants remove the apartment house from the lots within a reasonable length of time or, upon their failure so to do, that they respond in damages. Amended pleadings were filed and, upon issue being joined, the trial court, after hearing, found that plaintiff had been damaged in the sum of $3,000, and entered a decree in the alternative form above mentioned. From this decree the defendants appeal. The plaintiff also filed a cross-appeal asserting error in

the refusal to include as damages the sum of $363.42, being his share of the proceeds of the sale of the property by Schmeer to Larrowe.

■■ Defendants urge that, under the allegation that plaintiff is the co-owner with his wife of the property alleged to be damaged by reason of the erection of the apartment house, it is impossible to ascertain the extent of his interest and, therefore, the amount of damages, if any, that should be awarded to him cannot be determined. This question was not raised in the court below nor on former appeal. It may well be deemed to have been waived. At any rate, we are satisfied the plaintiff has sufficient interest to maintain the suit. The wife was not a party to the trust agreement.

It is the contention of the plaintiff that the declaration of trust executed by defendant Schmeer and the writing signed by the beneficiaries must be construed as one instrument and that when so construed a clear intention is expressed to prevent the erection of apartment houses or flats on the lots described in the trust agreement. The defendants assert that the declaration of trust is complete in itself, that it does not refer to the other writing signed by the beneficiaries, that it was in no way attached thereto at the time the trust agreement was executed, and that there is no restriction contained therein relative to the use of the real property. Plaintiff concedes that, if we look solely to the declaration of trust, his suit fails.

■ The two writings in question were under consideration by this court on former appeal (*Heitkemper v. Schmeer,* 130 Or. 644 (275 P. 55, 281 P. 169)) and were construed adversely to the contention of the appellants. The court said:

"When the declaration of trust executed by Schmeer is read in the light of the instrument contem-

poraneously executed by the beneficiaries, there can be no doubt that it was the intention of the parties thereto to prevent the invasion by apartment houses of this residential district.''

It was held that the complaint alleged facts sufficient to constitute a cause of suit. In passing on the demurrer, the court attached no importance to the allegations concerning the interpretation of the written trust agreement set forth in the complaint. Such allegations amounted only to a conclusion and were subject to be stricken on motion. The court looked to the writings in determining whether a trust agreement was created.

Thus the law of the case relative to the construction of the two writings in question was declared on former appeal. It is controlling here. As was said by Mr. Justice RAND, speaking for the court in *Simmons v. Washington Fidelity National Insurance Co.,* 140 Or. 164 (13 P. (2d) 366):

''It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'' Citing numerous authorities in support thereof.

Counsel for appellants recognize the force and effect of such rule but assert that it is within the power of the court to declare otherwise on this appeal and urge that the court again construe these writings to the end that there may be an adherence to well-established legal principles relative to the creation of trust agreements.

■ Without invoking the ''law of the case'', we are convinced that the construction of these writings on

former appeal is sound. We think the two writings should be construed together for the following reasons:

(1) The papers were executed contemporaneously and were unquestionably a part of the same transaction.

(2) The papers were physically attached to each other immediately after their execution. This statement may be based upon the testimony of defendant Schmeer alone, as witness the following portion of the record:

"Q. You had this in your possession either duplicate or copy of it from the time it was made?

"A. Yes, sir.

"Q. And was this second paper signed by these neighbors attached to it?

"A. Yes, sir.

"Q. And in your possession all the time?

"A. Yes, sir."

As to the legal effect of the physical attachment of two or more papers pertaining to the same transaction, see 27 C. J. 263.

(3) The writing executed by Heitkemper and the other beneficiaries referred to the declaration of Schmeer.

(4) Each of the papers made reference to the same subject matter, namely, the creation of a trust concerning the disposition of real property.

(5) The writing signed by the beneficiaries was not complete in itself as shown by the reference therein to the "*hereinbefore* described real property" and to the several amounts contributed to the purchase price "as *hereinbefore* stated". It will be observed that, in the declaration of trust, the real property is described and the names of the beneficiaries and the several amounts which had been contributed towards the purchase price are set forth.

(6) The parties themselves have construed these two papers as constituting a trust agreement containing a covenant against the use of the real property for apartment house purposes, as clearly evidenced by their course of dealing concerning the same. When the writings are construed together, there can be no doubt as to the intention of the parties to the trust agreement and the same can be ascertained without resort to parol testimony.

We are not unmindful of the general rule that an unsigned paper may not be read in connection with a signed paper which makes no reference to it. See numerous cases cited in note, 85 A. L. R. 1204. However, we think this general rule has no application to the facts in this case. When we take into consideration all of the matters to which attention has been directed relative to the execution of this trust agreement, it seems clear that the parties adopted the two papers as constituting their agreement and that they may be considered as one instrument: 25 R. C. L. 680.

█ We are unable to agree with the contention of the appellants that the trustee had the power to decide for what purpose he might sell the property. The discretionary power which was vested in him relative to the sale of the property is limited by the restriction in the trust agreement regarding apartment houses or flats.

█ If force and effect be given to the law as declared on former appeal, it follows that when defendant Schmeer sold the property to Larrowe without any restriction against the erection of an apartment house there was a breach of the restrictive covenant and the plaintiff, by reason thereof, is entitled to recover whatever damages were sustained, unless the record discloses a waiver of such restriction or his conduct has

been such as to estop him from asserting a breach of the trust agreement. True, at one time the plaintiff offered to sell his interest to Schmeer without restrictions as to the use of the property but the option was never exercised and after its expiration the plaintiff consistently maintained his objection to the sale of the property for apartment house purposes. We think the facts do not show a relinquishment of his rights under the trust agreement. Certainly there is no element of estoppel involved. The plaintiff did nothing to mislead the defendants. When Schmeer sold the property to Larrowe he was fully apprised of the attitude of the plaintiff and he proceeded, as he says, under the belief that he had a legal right to make the sale. Neither was Larrowe misled as he had constructive, if not actual, knowledge of the trust agreement. He makes no real contention that he was an innocent purchaser. He was willing to acquire the property feeling secure by virtue of his title insurance and the covenants of warranty contained in the deed from Schmeer.

It is next contended by defendants that there has been such a radical change in the character of the district in question, caused by the invasion of apartment houses and other commercial enterprises, that it would be inequitable to enforce the restriction under consideration. We recognize the rule that, where such changes in the character of the district have taken place that enforcement of such restrictions would not have any effect towards carrying out the original purpose for which the restriction was imposed, courts of equity will refuse enforcement. See numerous authorities cited in exhaustive note, 54 A. L. R. 812. However, we believe that the evidence in this case does not show that there has been such a radical change. The district is still predominantly residential in character. The fact

that the character of the territory surrounding this restricted district has changed does not affect the question of the enforcement of the restriction within such district: *Thompson v. Langan,* 172 Mo. App. 64 (154 S. W. 808); *Bolin v. Tyrol Investment Company,* 178 Mo. App. 1 (160 S. W. 588). Neither do we think it material that, by virtue of a zoning ordinance enacted by the city of Portland in 1924, the erection of apartment houses is permitted in a district which includes the property of the plaintiff. Such ordinance would not have the effect of abrogating the contract upon which plaintiff relies: *Ludgate v. Somerville,* 121 Or. 643 (256 P. 1043, 54 A. L. R. 837); *Crawford v. Senosky,* 128 Or. 229 (274 P. 306). Assuming that there had been such change in character in the district as contended by the defendants, it would, no doubt, be ground for denying equitable relief, but would not preclude redress at law for damages sustained by reason of the breach of the restrictive covenant: *Amerman v. Deane,* 132 N. Y. 355 (30 N. E. 741, 28 Am. St. Rep. 584); *Kountze v. Helmuth,* 67 Hun. 343 (22 N. Y. S. 204). In the instant case the plaintiff has been denied equitable relief. The cause was remanded to determine the amount of damages, if any, to which plaintiff was entitled in the event he prevailed after issue was joined on the facts. Equity, having assumed jurisdiction, will grant complete relief.

We next proceed to the question of damages. How much less valuable as a home was plaintiff's property by reason of the use of the building erected for apartment house purposes? In consideration of this phase of the case it is important to have in mind the situation of the parties as it existed at the time the trust agreement was executed. The eight persons who entered into this trust agreement in 1910 were at that time the owners of residence property located in five contiguous

blocks in Goldsmith's addition, such district lying between Northrup street on the south, Pettygrove street on the north, 24th street on the east, and 26th street on the west. At the time of the execution of the trust agreement there were no apartment houses in block 11 in which plaintiff's property is located. The apartment house nearest to this property was the Bruce apartment house about one block south, facing on 25th street. This, however, was not within view of the house where plaintiff lived. The Pettygrove apartments were later constructed on the northeast corner of the block adjoining block 11 on the east. At the present time there are apartment houses and flats on the north side of Northrup street between 25th and 23d streets. Plaintiff's house faces on Overton street. There are no apartment houses on this street for a distance of several blocks and it is essentially of a residential character. Overton street is one block south of Pettygrove street. The apartment house which Larrowe erected is on the northwest corner of block 11 and faces on Pettygrove and 25th streets. The rear of the house which plaintiff erected in 1907 at a cost of $8.500 is about seventy feet distant from the back of the apartment house. In view of the general encroachment of commercial interests upon this district and the fact that these property owners had control of only two lots for the purpose of preventing the invasion of apartment houses, it is apparent that the trust agreement was an improvident one. Block 11 contains a few vacant lots which, under the zoning ordinance, might be used for apartment house purposes. Nevertheless plaintiff was entitled to the full benefit of his contract and it is immaterial that all of the other beneficiaries have seen fit to dispose of their interests therein to defendant Schmeer. It would greatly extend this already

lengthy opinion to recite in detail the evidence bearing on the question of damages. We are convinced that the damages found by the lower court are excessive. It is believed that the sum of $1,000 would be full and fair compensation. In addition to this amount, plaintiff is entitled to recover from the defendant Schmeer the sum of $363.42, being his share in the proceeds of the sale of the property to Larrowe.

The decree of the lower court will be modified and the cause remanded with directions to enter a joint and several judgment against the defendants Schmeer and Larrowe in the sum of $1,000 and also a several judgment against the defendant Schmeer in the sum of $363.42. Neither party will recover costs and disbursements in this court.

---

CAMPBELL, J. (dissenting). This is suit seeking to restrain the building or maintaining of an apartment house on certain lots in Goldsmith's addition to Portland.

On October 28, 1910, the Giles Investment Company, a corporation, conveyed Lots 16 and 17 of Block 11, Goldsmith's Addition to Portland, to R. W. Schmeer, trustee. The consideration contributed by the trustee and seven others, of which plaintiff was one and who contributed one-ninth thereof, for the conveyance, was $12,000 — $4,500 in cash and the balance secured by a mortgage. On the same date, defendant, R. W. Schmeer, executed a declaration of trust in writing showing that he held the legal title for the use and benefit of himself and the seven others and further declared that:

"* * * and I do, for myself, my heirs, executors and administrators, covenant and agree to and with said parties and each of them, and with their and each

of their executors, administrators, and assigns, that I will hold, manage and dispose of said real property as in my judgment may seem best, and I will convey the said real property by a good and sufficient deed to the purchaser of said property when the same is sold and after deducting any and all sums paid for assessments, taxes, and charges of every kind that may have been paid or advanced by me for the benefit of said property and the payment of said mortgage and interest, that the balance remaining shall be paid to the several parties in interest in proportion to their payments on account of the said purchase price, assessments, taxes, costs, mortgage and interest.''

This declaration of trust was accepted by his trustors by the following writing:

''The undersigned, property owners and residents in the vicinity of the hereinbefore described real property, for the purpose of preventing the purchase of said real estate by a stranger and the possible erection thereon of an apartment house or flats, which we consider will be detrimental to the appearance and value of our several residences and lots, have appointed R. W. Schmeer our Trustee to purchase and hold the title of said real estate, and we have contributed to the said purchase price the several amounts as hereinbefore stated, and we hereby further agree to reimburse our said Trustee on demand for any and all sums paid for assessments, taxes and charges of every kind that he may pay on account of said property and said mortgage and interest.

''We hereby agree to the terms and conditions of the Declaration of Trust signed by R. W. Schmeer.''

This acceptance was signed by M. G. Thorsen, Mrs. R. Becker, J. R. Krausse, Frank A. Heitkemper, A. L. Levy, C. J. Cook and William Gadsby, the trustors, who with the trustee, Schmeer, had contributed to the purchase price.

In 1914, the majority of the trustors requested the trustee to dispose of the property without restrictions

as to apartment houses and flats. The plaintiff was apprised of the desire on the part of the majority and wrote the trustee that while he would very much regret to see an apartment house erected on these lots, closed his letter by saying:

"However, I would not like to be the only one to stand out and if the others concerned would prefer to sell, I would not feel like making any objections provided we could sell for a price which would not mean a loss."

On March 23, 1922, the trustee wrote the plaintiff informing him that at a meeting of the owners the trustee was instructed to sell without restriction as to apartment house and unless objection was made within five days the trustee would offer the property for sale on said terms. Plaintiff made no reply.

The trustee made no sale of the lots and the matter drifted along until about September 1, 1925, when the beneficiaries executed an option to R. W. Schmeer to the lots in question, permitting him to buy said lots without restriction as to their use. The interest of some of the beneficiaries became involved and it required some time to adjust the transfer so as to enable the trustee to convey good title. By its terms, the option would expire on November 1, 1925. However, all the other beneficiaries except plaintiff completed the contract of sale to defendant Schmeer after the expiration of the option. Plaintiff was aware of these transactions. He however refused to complete the contract of sale to Schmeer because the option to purchase had not been exercised within the time therein limited. Notwithstanding that plaintiff knew of the action of defendant Schmeer in buying the interest of

the other beneficiaries after the expiration of the option, he gave no notice of his intention to rely upon the terms of the option or to cancel the same, until January, 1926. Thereafter and on November 29, 1926, defendant Schmeer, as trustee and as an individual, conveyed, without restrictions as to apartments or flats, the north one-half of these lots to defendant Larrowe. The trustee thereupon notified plaintiff of the sale and the amount of the purchase price and on December 18, 1926, sent him a check for his proportionate share. This check plaintiff retained in his possession until January 8, 1927, when he returned it to the trustee with the advice that he refused to accept it or sanction the sale.

Defendant Larrowe began the construction of an apartment house upon these lots within a few days after his purchase and completed the excavation for the basement during the month of December, 1927. This construction work was within eighty feet of plaintiff's residence and must have been known to him during its progress. He was informed, as early as January 1, 1927, by the contractor on the job, that defendant Larrowe was constructing an apartment house, but made no move in the matter until January 12, 1927, when he notified Larrowe not to proceed further in the construction.

On March 9, 1927, when the building was about one-half completed, the complaint in this suit was filed, alleging in effect the above facts and further alleging that the trustee, the plaintiff and the other trustors entered into an agreement whereby the trustors and the trustee purchased the lots and,

"* * * when so purchased should never be sold to a stranger for the purpose of building or using on either or both of said lots, or with authority to any

purchaser to build or use thereon, an apartment house or flats; but it was agreed that the property should be sold thereafter with a restriction against the erection thereon of an apartment house or flats.

"In order to effect the purpose of said joint undertaking, as aforesaid, and for no other purpose, it was mutually agreed between the contributors to appoint the defendant, R. W. Schmeer, one of the contributors, as the agent of the contributors to effect the purchase of the said property for the benefit of all the members of said joint enterprise, and it was agreed that the legal title of the said property should be taken in the name of the said R. W. Schmeer, to be held by him as trustee for the benefit of and to effect the purpose of the contributors, as aforesaid, and for no other purpose, and the said defendant, R. W. Schmeer, as one of the parties to said joint agreement, agreed with the others to accept said agency and said trusteeship according to the terms of said appointment, and not otherwise."

Plaintiff had contributed one-ninth of the purchase price and was therefore the equitable owner of an undivided one-ninth interest in said property.

Plaintiff attached a copy of the declaration of trust made by defendant Schmeer, the salient parts of which have been heretofore quoted, and made the same a part of his complaint. He further alleged:

"That in and by the said declaration, the said R. W. Schmeer, intended to declare the terms of his trusteeship and his powers and duties thereunder in accordance with the terms of the agreement hereinbefore set out, and to declare that he held said property for the purpose of preventing a stranger from buying said property and building thereon an apartment house or flats, and particularly intended to mean by the following words in the said declaration, 'that I will hold, manage and dispose of said real property as in my judgment may seem best, and I will convey the said real property by a good and sufficient deed to the

purchaser of said property,' that he was to dispose of the said real property to effectuate the purpose of the said trust as hereinbefore recited, and not otherwise, and to sell the same subject to the restriction against apartment houses or flats, and not otherwise, and that the good and sufficient deed in the declaration was to be a good and sufficient deed, subject to the said restriction, and not otherwise, and before and at the time of accepting said trusteeship agreed orally to the same effect with plaintiff and the other contributors.''

He then alleged, in substance, the sale by Schmeer to Larrowe without restrictions as to apartment houses or flats, and the construction of the apartment house by Larrowe, and that he was damaged thereby and asked for a decree and judgment that the apartment house be abated and removed and the lots restored to their original condition.

To this complaint, defendant filed a demurrer which was sustained by the circuit court. Plaintiff refusing to further plead, the suit was dismissed and the cause appealed to this court.

On that state of the pleadings, this court reversed the decree and judgment and remanded the cause with permission to plaintiff to amend his complaint and ask for an alternative decree for damages in the event the trial court should find that the removal of the apartment house could not be effected except at great loss to defendant Larrowe: *Heitkemper v. Schmeer,* 130 Or. 644 (275 P. 55, 281 P. 169).

Thereafter, plaintiff amended his complaint so as to conform to the suggestion of this court, said amendments not being material to the issues herein presented and said amended complaint being in effect as hereintofore set out, except that plaintiff alleged damages

in the sum of $8;776.23 and changed the prayer to the alternative.

To the amended complaint, defendant Schmeer filed an answer in substance admitting the purchase of the lots by him as trustee, the execution of his declaration of trust, the execution of the writing made by the other beneficiaries in acceptance of his declaration of trust, but denied that there was any other agreement or understanding on his part or to his knowledge except as stated in said declaration and denying generally that plaintiff suffered any damages by reason of the sale of the property without restrictions as to apartment houses or flats. He alleged that in 1914 the plaintiff had waived any right to have the property sold with such restrictions and therefore should be estopped from now claiming the same, and further alleged that in 1922 plaintiff consented to a sale of the lots without such restriction; that in 1925 the plaintiff again waived the right to have such restrictions inserted in any conveyance executed by the trustee, by giving defendant Schmeer an option to purchase said property without such restrictions with the knowledge and information that Schmeer would not purchase the interest of any of the trustors unless he could get the interest of all the trustors and without restrictions as to apartment houses and flats and that plaintiff knew that Schmeer was completing the purchase from the other trustors after the option had expired but that plaintiff gave no notice until January, 1926, of his refusal to go through with the deal, therefore plaintiff should be estopped from now asserting any rights under such restrictions. He further alleged laches on the part of plaintiff in that he was aware on January 1, 1927, that defendant Larrowe was constructing an

apartment house on those lots and made no objection until January 12, 1927, and that, notwithstanding defendant Larrowe continued the construction of the apartment house, this suit was not filed until March 9, 1927, at which time the building was 50 per cent completed; the building was to cost $65,000.

The defendant Larrowe filed an answer to the same tenor and effect as that of the defendant Schmeer and further alleged that he had no knowledge or information of any restriction being against said lots until after he made the purchase and expended large sums of money on the property.

The plaintiff, in his reply, denied all the new matter set up in the answer of either defendant and asserted that this court, on the former appeal, placed a construction upon the declaration of trust and the acceptance of said declaration and that the parties should be bound by that decision.

The cause came on for trial and, upon hearing the testimony and argument of counsel, the court made findings in favor of plaintiff and entered an alternative decree and judgment, decreeing that the maintenance of the apartment house constructed on said lots should be abated and the lots restored to their original condition within ninety days or, in default thereof, the plaintiff recover of and from defendant and each of them the sum of $3,000 in full for all damages occasioned by the building of said apartment house. Defendants appeal.

■ Appellants contend that the circuit court erred in holding that the declaration of trust, signed by defendant Schmeer, and the writing, signed by the beneficiaries, should be construed as one instrument.

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law." Oregon Code 1930, § 9-905.

The evidence is not clear whether the two papers, the declaration of trust and the acceptance, were attached together at the time of their execution. The complaint would rather intimate they were not. Paragraph XI of the complaint in support of the declaration of trust alleges:

"That when copies of the declaration so made as aforesaid by the said R. W. Schmeer, were delivered to plaintiff and the other contributors, they, in order to make more clear and certain the meaning of said declaration of trust, signed and executed and delivered to the said R. W. Schmeer, the following writings:"

Then follows a copy of the acceptance of the declaration of trust hereinbefore quoted. We do not attach any particular importance in the instant case as to whether these papers were or were not physically attached at the time of their execution. In any event, each writing was practically contemporaneous and it appears that there has never been any question but that the trustee and each of the beneficiaries knew all about both writings all the time. Each writing clearly refers to the same transaction. One writing having been executed by the party "creating the trust" and the other by the party "declaring the trust", they should be read together.

■ This assignment of error is predicated on the circuit court holding that the declaration of trust and the written acceptance thereof, when read as one instrument, prohibits the trustee from ever conveying the property held in trust without restrictions as to apartment houses or flats.

The law favors the greatest latitude of individual freedom of contract but does not look with favor upon limitations upon the use of real property. Any restrictions on the use of such property, must clearly appear in the instrument creating such restrictions, all doubts being resolved in the favor of the untramelled use: *Gerling v. Lain,* 269 Ill. 337 (109 N. E. 972) ; *Van Duyne v. Chase,* 149 Iowa 222 (128 N. W. 300) ; *Casterton v. Plotkin,* 188 Mich. 333 (154 N. W. 151) ; *Fortesque v. Carrol,* 76 N. J. Eq. 583 (75 Atl. 923, Ann. Cas. 1912A, 79) ; *Hunt v. Held,* 90 Ohio 280 (107 N. E. 765) ; *Crawford v. Senosky,* 128 Or. 232 (274 P. 306). With this view of the law in mind, we proceed to analyze the declaration of trust.

Here were eight people owning, and all but one occupying as a residence, what they considered, at that time, residential property scattered over five blocks in what was Goldsmith's addition to the city of Portland. They jointly purchased the two lots in Block 11, in 1910. Their purpose in purchasing was to prevent the sale to a stranger and the possible erection of an apartment house or flats thereon at that time. There were no building restrictions on any of the other lots in any of the blocks in which either of these persons owned or occupied his residence. In making the purchase, they made use of an agent or trustee to hold the legal title. The conveyance named the grantee therein, defendant R. W. Schmeer, as trustee without

disclosing either the terms of the trust, or the bene-ficiaries. After the passage of the law in 1919 (Oregon Code 1930, § 63-110) the parties knew that anyone buying the property from the trustee might be an innocent purchaser; that a deed from the trustee as grantor would be prima facie evidence of title in the grantee.

In 1910, there were many vacant lots without restrictions as to their use, over which the trustors had no control, in the five blocks in which the trustors' individual residences were located. They must have anticipated the change that has actually occurred in the locality from a strictly residential district to one where apartments, flats, etc., have been built. Almost one-half of the block on which the home of Mr. Levy, one of the trustors, is located, and immediately south of Block 11, is occupied with apartments or flats. It would be very natural for the trustors, knowing the difficulty in getting eight men to agree as to the proper time to make a sale of said property and under what conditions the sale should be made, to place entirely in the hands of the trustee the power to determine when to make the sale and the conditions and the restrictions to be placed against said property.

The trustee did,

"Covenant and agree  *  *  *  that I will hold, manage and dispose of said real property as in my judgment may seem best, and I will convey said real property by a good and sufficient deed to the purchaser of said property, when the same is sold."

Plaintiff now contends that, by the above declaration, R. W. Schmeer intended to,

"* * * declare that he held said property for the purpose of preventing a stranger from buying the said property and building thereon an apartment house or flats and particularly intended to mean in the following words in the declaration, 'that I will hold, manage and dispose of said real property as in my judgment may seem best, and I will convey said real property by a good and sufficient deed to the purchaser of the said property'; that he was to dispose of said property to effectuate the purpose of said trust * * * to sell the same subject to the restriction against apartment houses or flats and before and at the time of accepting the trusteeship, agreed orally to the same effect with the plaintiff and other contributors."

There is no evidence of such oral agreement. It is remarkable that if the understanding of said declaration, at the time it was made, was as now claimed by plaintiff, that nothing was mentioned of any restriction to be inserted in the conveyance which the trustee covenanted to make to the purchaser. The disposal of the property was to be left to the trustee's best judgment.

It appears that the man who made the sale to the beneficiaries represented that he had a prospective buyer who desired to and in a short time would buy this property from the trustee and erect thereon a residence. There appears to have been no doubt in the minds of the beneficiaries but that a sale would be made to said prospective buyer and that it would not be necessary to place restrictions in the deed. All the contributors who testified agree that the understanding was that it would be necessary to hold the property but for a very short time. The beneficiaries were all experienced business men of Portland, so that the evidence that a sale would be consummated shortly

must have been very convincing. There is no evidence of an intention to hold the property for a considerable length of time, or that it was never to be sold without restrictions against apartment houses and flats. Needless to say, the prospective purchaser failed to materialize. In the meantime the property kept decreasing in value until at the time of the sale by the trustee it would bring about only one-half of what the trustee paid for it.

Plaintiff contends that what is meant by the statement in the declaration of trust, in which defendant Schmeer covenanted to convey the said real property by a "good and sufficient deed", is that the deed that the trustee should make in case of sale would be a "good and sufficient deed" to protect the restrictions. The words "good and sufficient deed" are words of well-known and generally accepted import. They are in common usage in contracts for the sale of land.

"If it had been the intention of the defendant to covenant to execute and deliver a deed without warranty, he should not have used the words 'good and sufficient'." Seaboard Air Line Ry. Co. v. Jones, 120 S. C. 354 (113 S. E. 142).

In a specially concurring opinion in the above case, Cothran, J., said, "I concur upon the ground that a covenant to convey by a 'good and sufficient deed' means by general warranty." (Citing many cases.)

"It is a general rule that 'an agreement to sell land, and to give a good and sufficient deed of it, means a deed that will convey a good title to the land'. Linton v. Allen, 147 Mass. 231, 17 N. E. 523." New York N. H. & H. R. Co. v. Butter, 276 Mass. 236 (176 N. E. 797).

"The accepted rule is that upon agreement for the sale of land the vendor must be considered as contract-

ing for a general warranty deed unless the contrary is clearly shown. In this case, the contract requires the vendor to execute and deliver a good and sufficient deed of conveyance, and the trial court did not err in construing this to require the vendor to convey by deed with general warranty." Ford v. Street, 129 Va. 437 (106 S. E. 379).

"A good and sufficient deed is a marketable deed— one that will pass a good title to the land it purports to convey. We do not agree with counsel that a stipulation in a contract providing that the grantor shall convey 'a good and sufficient deed', is satisfied by a conveyance of any title he may have, whether it be good or bad." Hall v. McKee, 147 Ky. 841 (145 S. W. 1149).

To adopt the meaning of those words now claimed by plaintiff would be giving words of ordinary use and acceptation a strained and unusual construction: Oregon Code 1930, § 9-217. There are no facts or circumstances in the instant case that would justify the court in so construing them.

There is no allegation in the complaint, nor is there any evidence, that the trustee did not use his best judgment in making the sale.

To adopt the construction claimed by plaintiff, would be adding to the trust agreement covenants which neither the trustors nor the trustee made, to say nothing of the statute which provides that when the terms of an agreement have been reduced to writing it is to be construed as containing all those terms and excludes all other evidence of its terms except the writing, with exceptions not material to this case: Oregon Code 1930, § 9-212. We would also have to ignore the provision of the Code defining the office of the judge in the construction of an instrument, "not to insert what has been omitted": Oregon Code 1930, § 9-214.

It is undisputed and the fact is that the locality which the trustors wished to protect had been invaded by the erection of many commercial buildings, such as the zoning ordinance permits, some considerable time before the sale by the trustee to defendant Larrowe. In 1924, when the city adopted the zoning ordinance, the property of the trustors, including that of plaintiff was designated as Zone 2, territory in which apartment houses, flats, etc., might be built. But it is claimed by the respondent that this court passed upon the meaning of the declaration of trust and its acceptance thereof when this case was before the court on demurrer: *Heitkemper v. Schmeer,* supra. What this court passed upon at that time was whether or not the complaint stated a cause of suit. This court did not say that the two papers referred to as the declaration of trust and the acceptance thereof, when read as one, of itself showed a state of facts upon which plaintiff might recover or that a mere inspection of the deed which the trustee held was sufficient to put a purchaser on notice of the trustor's interest therein. The plaintiff, in his complaint, did not rely upon the written declaration of trust but alleged a further agreement made at the time the property was bought by the trustee, portions of said complaint referring to said agreement being above quoted. The complaint with such allegations was sufficient. But, when issue was joined and the agreement denied, it was incumbent upon the plaintiff to prove the allegation relating to such agreement. The plaintiff must have thought that the agreement, alleged in addition to the declaration and acceptance, was necessary to his cause or he would not have so pleaded.

It will be observed that this suit, as originally begun, was to prevent the building of an apartment

house or flats on these two lots, alleging that such a building would greatly diminish the value of plaintiff's property.

■ The plaintiff having alleged that he was damaged by reason of the construction of an apartment house, it was incumbent upon him to establish his allegation by a preponderance of the evidence. It would seem that the preponderance of evidence was entirely against this allegation. Apart from plaintiff's own testimony and that of his wife, the only other witness who testified that the plaintiff's property was damaged was Mr. Dean. He testified that the property was damaged to the extent of $6,000. In stating how he arrived at that conclusion, he says, in effect, that notwithstanding that the property is located in an unrestricted district, as to apartment houses, and that many such buildings have already been erected therein, not until some one actually began the construction of such a building in the immediate vicinity of plaintiff's residence did the lack of restrictions affect its value. His testimony is not borne out by the general experience of property owners under the zoning ordinance of Portland.

On the other hand, Mr. A. H. Hickman, with an experience of twenty-three years in the realty business in Portland, Mr. A. R. Ritter, with twenty-one years of experience in the same business in Portland, Mr. A. C. Callan, a resident of Portland since 1889 and in the real estate business since 1911, and Mr. Henry E. Reed, who has lived in Portland for sixty years and has been in the real estate business continuously for the past seven years, specializing in appraisals, and who had been in the real estate business formerly as early as 1896 and who served for many years as

assessor of Multnomah county and is generally recognized as an authority on real estate values in Portland, all testified, in effect, that it is the restriction to residence property in a whole district or zone that gives the property in such districts value as residential property. The fact that property is located in a district without such restrictions, and has already been invaded by commercial buildings, is what decreases its value as residential property rather than the actual construction of one more commercial building. They further testified that the building of the apartment house in suit did not damage or lessen the value of plaintiff's residential property.

The reason given by the beneficiaries for their purchase of the property was because they believed that the erection thereon of apartment houses or flats "will be detrimental to the appearance and value of our several residences and lots". The value they had in mind must have been its commercial value. There is no evidence that the building in question had detracted from the appearance of plaintiff's residence and the preponderance of the testimony is that it has not diminished its value.

The evidence shows that such restrictions of the use of property tend to diminish its value unless it is situate in a restricted residential district. Placing restrictions as to apartments or flats on only two lots in a district where apartment houses and flats already exist and all other lots are unrestricted would greatly diminish the value of the lots so burdened. This is abundantly established by the history of the lots under consideration. The lots in suit have no peculiar residential value over and above that of the other lots in the vicinity. It is not likely that any one desiring to

buy strictly residential property would purchase property with such restrictions when there were so many lots without restrictions and without buildings in the vicinity. The purpose for which the lots were acquired has ceased to exist. Restrictions on this tract are no longer of value to plaintiff. The trustee has held the property for more than a reasonable length of time.

We must remember that this is not a suit to abate a nuisance, but to enforce the terms of a trust regarding certain restrictions. The character of the territory sought to be protected having so changed, the purposes of the trust have been defeated by causes outside the trust agreement. The purpose was to protect a district, not an individual residence.

The judgment of the trial court on a question of fact is entitled to weight and consideration but a suit in equity must be tried *de novo* in this court and while we give the lower court's opinion on questions of fact consideration, this court is by no means bound by the trial court's conclusions. It is argued that the trial court having viewed the premises he is in a much better position to estimate the value of the evidence, than this court. If this were a suit to abate a nuisance, that argument would be entitled to great weight, but the object of the suit is not to determine what damage may have been occasioned by the construction of this particular apartment house, by the manner of its construction and the way in which it is conducted, but as to what damage would be occasioned by the construction of an apartment house when conducted according to law and the ordinances of the city of Portland, and so as not to create a nuisance. Under those circumstances, the view of the particular building is of very

slight value in determining the matters at issue in this cause.

In reference to how his property is damaged, plaintiff testified:

"So far as the question you asked, whether it affected the home itself to a great extent, it has destroyed it so far as pleasure and enjoyment of the home is concerned, since they put that apartment there, for several and many reasons. In the first place, it is the outlook of having a very ugly building to stare at in the face from rooms we occupy and like to look out of the window of. It has made a congested condition there; it has a transient population that comes and goes, and it is rather noisy. With that condition there, that has from three to four, sometimes as high as twelve automobiles parked along the land we own right on Pettygrove street. It has resulted several times we could not get in front of our garage, they were parked in front of the garage way. It has resulted in us having to go out and pick up trash and debris in the yard thrown out windows. Children from the apartment have overrun our garden place there; you could not keep them away, and each apartment is fitted with a radio that sometimes keeps going late at night. * * * It has made the house discomfortable. That is, we have never enjoyed it so much. The home means a great deal to myself and family, we use it to enjoy the place, but that has ruined it, so far as enjoying it is concerned. The greatest trouble we have had there, the greatest discomfort, is caused by a condition of smoke. Shortly after they put up that apartment, we were discommoded a great deal by very heavy thick smoke that came roaring out of a chimney on the apartment. I could not understand the smell until I investigated and found out they were using a garbage incinerator. * * *"

He further testified in effect that the smoke was oily and left an oily deposit on his residence. It would get into the house and smoke up the curtains. Some of the smoke he attributed to a defective oil burner.

Mrs. Heitkemper, wife of plaintiff, testified to like effect.

Many of the things of which plaintiff complains are not peculiarly or necessarily the result of the erection or maintenance of an apartment house, but of an apartment or other house improperly managed or conducted or equipped.

Nearly every element of damage, of which plaintiff and his wife complain, could easily be eliminated. The smoke nuisance, the noisome odors from the incineration of garbage, the parkings of cars in front of their driveway, they are not obliged to put up with. In no event would defendant Schmeer be liable on these elements. If he is liable at all, he is answerable for the maintaining of an apartment house when properly managed and conducted. It does not seem just or equitable that the owners of eight-ninths of the property should be obliged to forever contribute their interest therein to cater to the esthetic tastes of the owner of the other one-ninth.

Plaintiff has filed a cross-appeal claiming that he is entitled to one-ninth of the price for which the property sold. In this contention, plaintiff is correct. He had a one-ninth interest in the property and is entitled to that proportion of what it sold for.

There are some other questions presented by the record, but, taking the view that we do, they cease to be of any importance.

The decree and judgment of the lower court should be vacated and one entered dismissing the suit as against defendant Larrowe, and awarding plaintiff judgment against defendant R. W. Schmeer in the sum of $363.42.

RAND, C. J., concurs in this dissent.

Petition for rehearing denied March 13, 1934

ON PETITION FOR REHEARING
(30 P. (2d) 1119)

BELT, J. It is urged that error was committed in holding that plaintiff is entitled to a judgment against defendant R. W. Schmeer for $363.42, without requiring the plaintiff and his wife to quitclaim their interest in the property to defendant Larrowe. As stated in the original opinion, the plaintiff's wife was not a party to the trust agreement. She has no interest in the property which Larrowe purchased from the trustee. Hence, it would be idle to require a quitclaim deed.

We have nothing to add relative to the other assignment of error. It is covered to our satisfaction in the original opinion.

The petition for rehearing is denied.